[No. A035151. First Dist., Div. One. Oct. 23, 1987.]

In re the Marriage of SUSAN M. and FREDERICK L. WORTH.
SUSAN M. WORTH, Respondent, v.
FREDERICK L. WORTH, Appellant.

## COUNSEL

McKeehan, Bernard & Wood, Steven M. Bernard and David James Trapp for Appellant.

Staley, Jobson & Bernal, Nancy L. Garretson and John F. Staley for Respondent.

## OPINION

**RACANELLI, P. J.**—This appeal presents the novel issue whether the marital community has an interest in a copyright. We conclude that it does, and we affirm the judgment.

### FACTS

During the marriage, appellant husband wrote and published several books, including two books on trivia: The Complete Unabridged Super Trivia Encyclopedia (1977) and The Complete Super Trivia Encyclopedia, Volume II (1981). In their 1982 divorce decree, husband and wife agreed to divide the royalties from those books equally.

In 1984, husband filed an action in federal court against the producers of the board game, "Trivial Pursuit," alleging copyright infringement claiming that certain questions used in the board game were plagiarized from husband's books. Thereafter, wife sought an order from the superior court declaring that she would be entitled to one-half of any proceeds derived from that lawsuit based upon the terms of the interlocutory decree. The trial court granted wife's request and ordered husband restrained from disbursing the proceeds of any verdict or settlement until wife's portion was accounted for. Husband now appeals.[1]

---

[1] During the pendency of this appeal, the federal district court ruled that husband has no claim of copyright infringement; that ruling was affirmed on appeal. (*Worth* v. *Selchow & Righter Co.* (9th Cir. 1987) 827 F.2d 569.) Husband has since informed this court of his intention to pursue further appeal. In view of the pending status of the federal litigation, we have elected to reach the merits of the present appeal. Of course, should the federal opinion be affirmed without any material modification, the present lawsuit would become moot.

DISCUSSION

I

*Copyright Law*

Preliminarily, we undertake a brief odyssey into the somewhat arcane domain of copyright law. Patent and copyright protection is rooted in our federal Constitution: "The Congress shall have power . . . [¶] To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." (U.S. Const., art. I, § 8, cl. 8.)

Congress has implemented its constitutional power through enactment of a copyright statute, most recently rewritten and codified as the Copyright Act of 1976 (17 U.S.C. § 101 et seq.) (Act).[2] The Act provides broad protection to any creation expressed in tangible form. (§ 102(a).)

The Act grants to a copyright holder exclusive rights over his own work to copy, perform, display, distribute for sale, and prepare derivative works. (§ 106.) Any person who infringes upon the copyright and copies, sells, or creates derivative works without permission is subject to both civil and criminal action. (§§ 501, 506.) The copyright holder may grant a license to others to make use of the copyrighted work (§ 201(d)) customarily in exchange for the copyright holder's right to receive royalties.[3]

Unlike patents or trademarks, copyright protection is self-executing. No registration or prior approval is needed, and the copyright exists as soon as the work is created. (§§ 102(a), 302(a).) However, registration and an affixed copyright notice are required before the owner can bring suit for copyright infringement. (§§ 401, 408, 411(a).)

In a suit for copyright infringement, the copyright holder may obtain injunctive relief, impoundment of the infringing materials and damages. (§§ 502(a), 503, 504.) Recoverable damages include the copyright holder's actual damages plus any profits of the infringer not comprising a component of actual damages. (§ 504.)

---

[2] Unless otherwise indicated, all further section references are to the Copyright Act of 1976, title 17 of the United States Code.

[3] A royalty is generally defined to mean compensation given to the copyright owner for permission to use the copyrighted work. (Black's Law Dict. (5th ed. 1979) p. 1195.)

## II

### *Copyright as Community Property*

■ Husband points out that under the Act a copyright in a protected work "vests initially in the author or authors of the work." (§ 201(a).) Thus, he argues, the copyright belongs only to the author. We disagree.

■ Our analysis begins with the general proposition that all property acquired during marriage is community property. (Civ. Code, § 5110.) Thus, there seems little doubt that any artistic work created during the marriage constitutes community property. (See *Lorraine* v. *Lorraine* (1935) 8 Cal.App.2d 687, 701 [48 P.2d 48] [patent is community property]; *Frankenheimer* v. *Frankenheimer* (1964) 231 Cal.App.2d 101 [41 Cal.Rptr. 636] [no spousal interest in husband's literary property acquired after divorce]; *Herwig* v. *United States* (1952) 122 Ct.Cl. 493 [105 F.Supp. 384] [proceeds from sale of film rights to wife's book taxable to each spouse].)

The fact that husband alone authored the trivia books is not determinative. The principles of community property law do not require joint or qualitatively equal spousal efforts or contributions in acquiring the property; it is enough that the skill and effort of one spouse expended during the marriage resulted in the creation or acquisition of a property interest.

"California community property law is based on a partnership model in which each spouse contributes to and shares in the prosperity of the marriage (*In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 389 [145 Cal.Rptr. 716]). The community property concept recognizes the important role of each spouse in the success of the community and places husband and wife on an equal footing with respect to property accumulated during marriage (*Meyer* v. *Kinzer and Wife* (1859) 12 Cal. 247, 251). Each spouse's effort, time and skill are community assets (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 105 [113 Cal.Rptr. 58]; *Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 332 [58 Cal.Rptr. 304]; *Strohm* v. *Strohm* (1960) 182 Cal.App.2d 53, 62 [5 Cal.Rptr. 884]), and any benefit derived therefrom belongs to both (*Estate of Gold* (1915) 170 Cal. 621, 623 [151 P. 12])." (*In re Marriage of Hillerman* (1980) 109 Cal.App.3d 334, 337-338 [167 Cal.Rptr. 240].)

In the present case, husband conceived, wrote and published the trivia books during the marriage. Thus, the conclusion is inescapable that such literary works constituted community property. Indeed, at the time of the interlocutory decree, husband virtually conceded that the books were community property. Under the terms of the stipulated judgment (drafted by

husband's attorney), it is provided in pertinent part: "The parties agree that future royalties from the books . . . listed on the Petition, along with all reprints shall be paid equally to Petitioner and Respondent. The parties agree that the literary agent for Respondent shall be joined as a party and that the agent shall pay directly to Petitioner her one-half interest in the royalties. The parties agree that the court shall reserve jurisdiction over any issues that may subsequently arise regarding the distinction between a re-edition or complete reworking of any book which is community property." The reference in the final sentence to "any book which is community property" strongly indicates the parties' understanding and agreement that the listed books, which include the trivia books, were community property.

Moreover, husband's agreement to divide the royalties manifests further acknowledgement that the books were considered to be community property. Under the community property doctrine, rents, issues and profits have the same character as the property source itself. (Civ. Code, §§ 5107, 5108.) In agreeing to wife's entitlement to one-half of the royalties, husband has at least tacitly conceded the community property nature of the books themselves.

If the artistic work is community property, then it must follow that the copyright itself obtains the same status. Under copyright legislation, a copyright is automatically acquired upon expression of the work. (§§ 102(a), 302(a).) Here, husband registered the copyrights as well. Since the copyrights derived from the literary efforts, time and skill of husband during the marriage, such copyrights and related tangible benefits must be considered community property. (See 1 Nimmer on Copyright (1987) § 6.13[B], p. 6-37.)

Moreover, the Act expressly provides for the transfer of a copyright by contract, will "or by operation of law." (§ 201(d)(1).) Consequently, notwithstanding that the copyright "vests *initially*" in the authoring spouse (§ 201(a), italics added), the copyright is automatically transferred to both spouses by operation of the California law of community property.

Of course, a copyright itself is an intangible interest separate and distinct from the tangible creative work. (§ 202.) Although a copyright is "'. . . an intangible incorporeal right in the nature of a privilege or franchise . . .'" (*Remick Music Corp.* v. *Interstate Hotel Co. of Nebraska* (D.Neb. 1944) 58 F.Supp. 523, 542, affd., 157 F.2d 744, cert. den., 329 U.S. 809), it is nevertheless personal property. (*Stuff* v. *La Budde Feed & Grain Co.* (E.D.Wis. 1941) 42 F.Supp. 493.) And the community property doctrine encompasses *intangible* as well as tangible property. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 107 [113 Cal.Rptr. 58], disapproved on

other grounds in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41] [goodwill of professional practice]; *Golden* v. *Golden* (1969) 270 Cal.App.2d 401 [75 Cal.Rptr. 735] [same].) The fact that a copyright is intangible will not affect its community character or the community nature of any tangible benefits directly associated with the copyright.

We are, of course, cognizant of those decisions which determined that a law school *education* acquired during the marriage is not a divisible community asset. (See *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 461 [152 Cal.Rptr. 668], disapproved on another point in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285]; *Todd* v. *Todd* (1969) 272 Cal.App.2d 786, 791 [78 Cal.Rptr. 131].) In *In re Marriage of Aufmuth,* this court (Div. Four) reasoned that classification of a legal education, represented by a law degree, as a community "asset" would run counter to settled community property principles by requiring division of attributable postdissolution earnings which, by definition, constitute the separate property of the acquiring spouse.[4] (89 Cal.App.3d at p. 461.)

We think a copyright is analytically distinguishable. A copyright *has* a present value based upon the ascertainable value of the underlying artistic work. Its value normally would not depend on the postmarital efforts of the authoring spouse but rather on the tangible benefits directly or indirectly associated with the literary product.

In short, we conclude that a copyright on a literary work produced during the marriage is as much a divisible community asset as the underlying artistic creation itself.

### III

### *Agreement To Share Copyright*

Husband next contends that the trial court lacked jurisdiction to divide any proceeds resulting from the federal lawsuit because paragraph 8 of the interlocutory decree, which provided for equal division of the royalties, reserved jurisdiction only to resolve "issues that may subsequently arise regarding the distinction between a re-edition or complete reworking of [a] book . . . ." The argument is specious.

---

[4] The underlying rationale has been impliedly validated by the Legislature in enacting Civil Code section 4800.3, which provides not for a division of the value of the degree but only for reimbursement to the community for contributions to a spouse's education and training. (See *In re Marriage of Sullivan* (1984) 37 Cal.3d 762 [209 Cal.Rptr. 354, 691 P.2d 1020].)

The preprinted interlocutory judgment form contains a provision expressly reserving jurisdiction "to make such other and further orders as may be necessary to carry out the provisions of this judgment." The questioned order here was obviously intended to carry out the provisions of paragraph 8 of the interlocutory decree providing for equal division of royalties.

Husband also asserts, however, that the stipulated judgment purported to divide only the *royalties* from the books and not the copyrights as construed below. We cannot agree.

Husband's thesis runs as follows: since a transfer of the literary property does not convey any of the statutory rights attached to the work (§ 202), his agreement to share the royalties did not effect a transfer to wife of an interest in the copyrights, without which she has no colorable claim to share in any proceeds arising from infringement of the statutory right to the exclusive use of the books to prepare derivative works (§ 106).

But the argument construct fails to take into account the community nature of the copyrights. Although the stipulated judgment divided only the future book royalties and not the intangible copyrights, nonetheless, as property interests acquired during the marriage which remained undistributed under the terms of the interlocutory judgment, husband and wife would hold title to such undivided interests in the copyrights as tenants in common. (See *Henn* v. *Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10].) As a common owner of the copyright, wife would be entitled to share in *all* of the proceeds therefrom, including any settlement or award of damages resulting from the copyright infringement.

IV

*Federal Preemption*

■ Finally, husband argues that under the ultimate standard of the supremacy clause (U.S. Const., art. VI, cl. 2), California's community property laws have been effectively preempted by the federal Copyright Act. Since community property laws provide for an equal interest to both spouses in the community assets, and the Copyright Act vests ownership of the copyright in the author of the work alone, husband argues, the resulting irreconcilable conflict between state and federal law compels a conclusion that the state law is preempted. (See 1 Nimmer on Copyright, *op. cit. supra,* § 6.13[A], p. 6-34.) We are not so persuaded.

Husband's principal reliance is placed on *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802], in which the court held that

California's community property laws were in fatal conflict with the federal Railroad Retirement Act which vested ownership of railroad retirement benefits exclusively in the railroad employee spouse. (See also *McCarty* v. *McCarty* (1981) 453 U.S. 210, 224 [69 L.Ed.2d 589, 600-601, 101 S.Ct. 2728] [military retirement pay not subject to state community property laws]; *Free* v. *Bland* (1962) 369 U.S. 663, 668-669 [8 L.Ed.2d 180, 184-185, 82 S.Ct. 1089] [U.S. Savings Bonds standing in name of husband "or" wife not subject to state community property laws]; *Wissner* v. *Wissner* (1950) 338 U.S. 655, 658 [94 L.Ed. 424, 428, 70 S.Ct. 398] [National Service Life Insurance policy not subject to state community property laws, and proceeds belong to named beneficiary].)

But *Hisquierdo* and the related cases invoking the preemption doctrine are readily distinguishable. In each of those cases, the ownership of federal benefits was expressly defined by Congress to be the separate property of the designated recipient. In sharp contrast, the Copyright Act expressly provides for co-ownership as well as transfer of all or part of a copyright. (§ 201(a), (d).) Moreover, section 201 of the Act provides only that the copyright "vests *initially* in the author" (italics added); and nothing is found in the Act which either precludes the acquisition of a community property interest by a spouse, or which is otherwise inconsistent with community property law.[5]

■ Nor is husband's tandem reliance on the preemptive language of section 301 of the Act well placed.[6] Section 301 reveals an intent by Congress to supersede only state *copyright* laws. In that regard, a state law will be preempted only if the rights granted under state law are "equivalent to any of the exclusive rights within the general scope of copyright as

[5] Husband suggests that under the patent and copyright clause of the United States Constitution, copyright protection cannot be extended to anyone but the author. We disagree. The term "author," within the constitutional text, may be construed to include the author's spouse under the principles of co-ownership or transferred ownership we have discussed.

[6] Subdivision (a) of section 301 provides: "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

Subdivision (b) of section 301 provides: "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

"(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

"(2) any cause of action arising from undertakings commenced before January 1, 1978; or

"(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

specified by section 106 . . . ." (§ 301(a).) State laws granting or protecting other rights (such as breach of contract, conversion, defamation, etc.) have not been preempted. (See *Werlin* v. *Reader's Digest Ass'n, Inc.* (S.D.N.Y. 1981) 528 F.Supp. 451, 465; 1 Nimmer on Copyright, *op. cit. supra,* § 1.01[B]; Miller & Davis, Intellectual Property: Patents, Trademarks, and Copyright in a Nutshell (1983) § 27.1, pp. 405-408.) Rights of ownership and division of marital property are in no way equivalent to rights within the scope of copyright under the federal Copyright Act.

### CONCLUSION

In summary, we conclude that the copyrights on the trivia books constituted divisible community assets. We find no inconsistency between the federal Copyright Act and California's community property law so as to invoke the preemption doctrine. Because such assets were not disposed of under the provisions of the interlocutory decree, husband and wife remain as co-owners of an undivided interest in the copyrights. Accordingly, both parties are entitled to share equally in any of the proceeds directly or indirectly related to the pending federal lawsuit for copyright infringement.

The judgment is affirmed. Respondent to recover costs on appeal.

Elkington, J., and Newsom, J., concurred.