*In re* MARRIAGE OF BARBARA HEINZE, Petitioner-Appellee, and KENNETH HEINZE, Respondent-Appellant.

Third District    Nos. 3—93—0288, 3—93—0397 cons.

Opinion filed February 25, 1994.—Modified on denial of rehearing March 31, 1994.

Gregory J. McHugh, of Appleton & McHugh, of Aledo, for appellant.

Thomas L. Kilbride, of Rock Island, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The respondent, Kenneth Heinze, appeals from a judgment entered in a dissolution of marriage proceeding. The judgment divided the property of the parties and awarded custody of the minor children to the petitioner, Barbara Heinze. The respondent also appeals from an order which modified portions of the judgment following post-trial motions.

## ISSUES

The respondent raises four issues on appeal. He claims the trial court erred when it: (1) did not consider book royalties received by the petitioner as marital property; (2) denied the respondent's request for joint custody of the minor children; (3) found that $15,000 the respondent transferred to his parents was marital property; and (4) failed to properly value and divide the parties' marital property.

Following our review of the record and persuasive authority from other jurisdictions, we conclude that the trial court erred when it failed to classify as marital property the future book royalties generated from four books written by the petitioner during the

marriage. The petitioner's future book royalties should have been classified and allocated as marital property. Therefore, we modify the judgment to award the respondent 25% of the future book royalties generated by four books the petitioner wrote during the marriage.

As to the other issues raised on appeal, we have carefully considered the respondent's arguments and find they are without merit. Accordingly, we modify that portion of the judgment which related to the classification and allocation of the future book royalties. The balance of the judgment is affirmed.

## FACTUAL BACKGROUND

The petitioner and her coauthor, Karin Johnson, have written six books on the subject of speech therapy. Both authors have contracts with Lingui Systems (Lingui) which generate book royalties. Lingui publishes the books and pays royalties after the books are sold. The petitioner testified that five of the books were written during the marriage. The parties' marriage was dissolved in a judgment entered March 1, 1990. One book was written in 1990, following the dissolution (1990 book). Accordingly, we find that all royalties generated by the 1990 book are the petitioner's nonmarital property. Also, one of the petitioner's books is no longer in publication. Therefore, only four books written during the marriage are still being published by Lingui (four books).

In 1984, the petitioner began receiving book royalties from Lingui. She testified she received approximately $46,000 in royalties during the period from 1984 through 1988. During 1989, the petitioner received an additional $13,696.44 in royalties. In 1990, she received royalties of $12,016.27. Finally, the petitioner received approximately $13,000 in royalties during 1991. Approximately one-third of the royalties received in 1991 were generated from the sales of the 1990 book.

The petitioner provided the trial court with a detailed itemization and explanation of how she spent the royalties received from 1989 through the date of the dissolution. She said that the royalty income was used for the living expenses of the family. Therefore, we conclude that this royalty income was spent on family expenses and is clearly not subject to division.

The petitioner said the royalties are totally contingent upon the number of books sold by Lingui. She stated that future book sales are enhanced by the fact she participates in workshops and gives speeches on the subject of speech therapy. Mark Barrett, chief marketing officer with Lingui, testified in his evidence deposition that there are no plans to discontinue publication of any of the

petitioner's five books. However, Barrett indicated that he could not predict how long any of the books would continue to be published by Lingui. He also stated there was no way anyone could calculate future book sales or compute the amount of future book royalties.

Following this testimony, the trial court denied the respondent's claim regarding the petitioner's future book royalties. The court found the royalties were "speculative" and "completely unproved as to any value."

## FUTURE BOOK ROYALTIES

The crucial issue facing this court is whether the petitioner's future book royalties should be considered marital property. For clarification, we note that, when we refer to "future book royalties," we mean the royalties received after the dissolution for the four books written during the marriage. The petitioner argues that her future book royalties are analogous to a lawyer's contingent fee contracts and should not be classified as marital property pursuant to *In re Marriage of Zells* (1991), 143 Ill. 2d 251, 572 N.E.2d 944.

The classification of future book royalties as marital or nonmarital property appears to be one of first impression in Illinois. However, other jurisdictions have resolved similar classification issues. In *In re Marriage of Worth* (1987), 195 Cal. App. 3d 768, 773, 241 Cal. Rptr. 135, 136, the court determined that any artistic work created during a marriage constitutes community property. Thus, the court in *Worth* held that trivia books written by the husband during the marriage, and the royalties received from them, were community property. (*Worth*, 195 Cal. App. 3d at 774, 241 Cal. Rptr. at 137.) In *Dunn v. Dunn* (Utah Ct. App. 1990), 802 P.2d 1314, 1319, the court held that future royalty income derived from the husband's invention of surgical instruments used for implanting artificial knees was marital property. The court stated, "the right to future income is a marital asset where that right is derived from efforts or products produced during the marriage, even in cases where that right cannot be easily valued." *Dunn*, 802 P.2d at 1318.

Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) defines marital property as "all property acquired by either spouse subsequent to the marriage" with certain stated exceptions, none of which apply here. (Ill. Rev. Stat. 1991, ch. 40, par. 503(a).) We note that our statutory definition of marital property is very similar to California's definition of community property. Under California's statute, "all property acquired during marriage is community property." (*Worth*, 195 Cal. App. 3d at 773, 241 Cal. Rptr. at 136.) Therefore, although Illinois is not a community property State, we find

persuasive the legal reasoning of the court in *Worth*. The analysis in *Worth* was based upon similar facts to the case at hand. We also find persuasive the legal reasoning set forth in the *Dunn* case, which specifically addressed the issue of marital property. In the instant case, we hold the four books in question were "artistic works" or "products" created during the parties' marriage. Therefore, based upon the persuasive analysis found in *Worth* and *Dunn*, we conclude that the future royalty rights to the four books are marital property.

We do not agree with the petitioner's argument that her future book royalties are analogous to the contingent fee contracts discussed in *Zells*. In *Zells*, our supreme court held that neither contingent fee contracts nor professional goodwill is a marital asset subject to division. (*Zells*, 143 Ill. 2d at 253-56, 572 N.E.2d at 945-46.) The petitioner argues that the royalties in question are no more certain than an attorney's right to future contingent fees. We disagree.

■ The four books are actual, tangible works and products created during the marriage which have a proven cash value. Moreover, the book royalty contracts were executed by the petitioner and Lingui during the marriage. Therefore, we find that the royalties are more analogous to pension payments to be made in the future. In Illinois, pension rights are treated as marital property for dissolution purposes. (*In re Marriage of Mahaffey* (1990), 206 Ill. App. 3d 859, 868-69, 564 N.E.2d 1300, 1306.) Accordingly, an employee-spouse's contractual right to a pension plan is marital property subject to division to the extent that such rights accrued during the marriage. (*In re Marriage of Benz* (1988), 165 Ill. App. 3d 273, 281, 518 N.E.2d 1316, 1320.) "The theory behind this treatment is that these rights are valuable rights acquired during the marriage and, although the payments may not be received until after the marriage, they are property divisible as the fruit of the shared enterprise of marriage." (*Mahaffey*, 206 Ill. App. 3d at 869, 564 N.E.2d at 1306.) We conclude that the same reasoning is applicable here. In this case, the contract right to the future book royalties for the four books was acquired during the marriage. Consequently, similar to pension rights, the future book royalties are the fruit of the shared enterprise of marriage and should be divided as marital property.

In *Yannas v. Frondistou-Yannas* (1985), 395 Mass. 704, 714, 481 N.E.2d 1153, 1160, the court found that the trial court was warranted in failing to place a value on the husband's patents on artificial skin designed for the treatment of severe burn victims. The *Yannas* court determined that the trial court could have properly concluded that the value of the future income from this source was too speculative to consider. *Yannas*, 395 Mass. at 714, 481 N.E.2d at 1160.

■ Here, we conclude that, unlike the situation in *Yannas*, the trial court erred when it concluded that the petitioner's future book royalties were too speculative and unproven so that valuation was impossible. In the instant case, the petitioner received substantial book royalties during the marriage from 1984 up to the time of trial. As a result of the income received during the marriage, we do not believe the prospect of future book royalties is either unproven or speculative. Accordingly, we conclude that the future book royalties should have been classified as marital property and allocated between the parties.

### ALLOCATION OF FUTURE BOOK ROYALTIES

■ Ordinarily, a remand would be required for this allocation. However, we note that Judge John M. Telleen presided faithfully and diligently over the lengthy proceedings in this case, including three days of hearings on contested issues. Judge Telleen will be retiring from the bench at the end of this year. Any remand would certainly be to a judge unfamiliar with the lengthy record in this case. Under these circumstances and in the interest of judicial economy, we conclude that we need not remand this action to the circuit court of Rock Island County. (See *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 972, 466 N.E.2d 977, 1000.) This court has thoroughly reviewed the record in this case. Therefore, pursuant to our powers under Supreme Court Rule 366(a) (134 Ill. 2d R. 366(a)), we conclude that we may modify the trial court's order to reflect an equitable allocation of the future book royalties.

In making this allocation, we find the case of *Dunn v. Dunn* instructive. The court in *Dunn* noted that the husband spent time traveling to demonstrate the surgical instrument he invented. The court held that his wife was entitled to one-half of the royalties received from the invention, *less* an appropriate deduction for the time her husband spent generating the royalty income. *Dunn*, 802 P.2d at 1319.

We also note that section 503 of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 503) does not require an equal distribution of marital property. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37, 411 N.E.2d 238, 241.) Rather, this section provides that marital property should be divided in "just proportions." *Aschwanden*, 82 Ill. 2d at 37, 411 N.E.2d at 241.

In this case, the petitioner is a college professor in speech pathology. She belongs to the local, State and national associations in speech pathology and is the president of the State association. She testified that she participates in seminars and workshops throughout

the State of Illinois on the subject of speech therapy. She has also participated in seminars and workshops in the neighboring Midwest States and has been invited to attend such gatherings all over the United States. The matters addressed in these professional meetings are the same subjects the petitioner has written about in her books. The petitioner also gives speeches on the subject of speech therapy, including speeches at the State association's convention. She stated that, because of these activities, people know about her books and, as a result, the sales of the books are enhanced. She testified that there is a definite connection between her name recognition and the sales of the books.

Based on this evidence, it is clear that the petitioner's reputation and activities contribute to and enhance the sales of her books. The petitioner has regularly engaged in these activities following the dissolution and plans on continuing her efforts to promote the future sales of her books. Also, we note the petitioner has continued her writing activities after the dissolution and has written at least one additional book. The petitioner's efforts in continuing to write scholarly books will assist in the future sales of the four books that she previously wrote during the marriage. Accordingly, we conclude, based upon the record, that the petitioner's efforts are a significant factor in generating future sales of the four books. Based upon the reasoning in *Dunn*, we find that the petitioner's efforts entitle her to a larger share of the royalties.

We note the respondent conceded in his reply brief that the petitioner's efforts could be considered by this court in dividing the book royalties. Respondent suggested a 60% to 40% division of the royalties. We find the respondent's proposed division would not give the petitioner an adequate share of the royalties based upon her time-consuming and continuing efforts to promote sales of the four books. We conclude that a 75% to 25% division is not a great departure from the division proposed by the respondent and would be more appropriate based upon the unusual facts of this case. Accordingly, we modify the trial court's judgment to provide that the petitioner is awarded 75% of the royalties which are received by the petitioner following March 1, 1990, the date of the dissolution of marriage. This modification covers only the royalties for the four books the petitioner wrote during the marriage. Conversely, the respondent is awarded 25% of these royalties.

We are not unmindful of the income tax implications generated by Lingui's contracts to pay royalties to the petitioner. Based upon the terms of the contracts, Lingui pays the book royalties directly to the petitioner. Therefore, the petitioner bears the entire Federal and

State income tax liability for this royalty income. Accordingly, we conclude that it would be inequitable to require the petitioner to bear these tax consequences without imposing an offset upon the respondent's award of 25% of the book royalties. Consequently, the computation of the respondent's 25% of the book royalties shall be made in the following manner: (1) the petitioner shall compute the amount of each royalty payment from Lingui which is attributable to sales of the four books written during the marriage (gross royalties); (2) the petitioner shall determine her liability for Federal and State income taxes on the gross royalties based upon her applicable tax bracket; (3) the petitioner's income tax liability shall then be deducted from the gross royalties, thereby creating an amount which we will refer to as the net royalties; and (4) the petitioner shall pay the respondent 25% of the net royalties from the four books.

The respondent raises three additional issues. Following a thorough review of the record, we find that these arguments are totally without merit. However, we will briefly discuss each of the issues raised.

## JOINT CUSTODY

The respondent next argues that the trial court erred when it denied his request for joint custody. The parties had two children during the marriage. Laura is now 17 and Sarah is 15. The court's judgment awarded custody of the two children to the petitioner subject to the respondent's reasonable visitation rights. The court declined to order joint custody. The court specifically found "the parties are absolutely unable to cooperate in the best interest of the children."

The respondent contends that "[e]xcept for scheduling problems during the heat of divorce proceedings," there was no evidence to support the trial court's conclusion that the parties were unable to cooperate in decisions involving the best interest of the children.

Section 602.1 of the Act provides, in pertinent part:

"The court may enter an order of joint custody if it determines that joint custody would be in the best interests of the child, taking into account the following:

(1) *the ability of the parents to cooperate effectively and consistently with each other towards the best interest of the child.*"

(Emphasis added.) (Ill. Rev. Stat. 1991, ch. 40, par. 602.1(c)(1).)

This court recently held that, under this statutory provision, joint custody orders are appropriate *only* where both parents have displayed an unusual capacity to cooperate. *Kocal v. Holt* (1992), 229 Ill. App. 3d 1023, 1026, 595 N.E.2d 169, 171.

■ At trial, the petitioner testified that she and her husband did not have a good, cooperative working relationship regarding the children. Also, the record discloses that, during the pendency of dissolution proceedings, two contested hearings were required to resolve visitation disputes which occurred between the parties. In the respondent's written argument to the trial court, he stated, "there was testimony by both parties that there have been difficulties with exercising the visitation in the past because of the extremely strained relationship that exists between the Petitioner and the Respondent." The respondent's argument on appeal concedes that there were "scheduling problems." We find the record clearly supports the court's determination that the parties were unable to cooperate. Accordingly, we conclude that the trial court did not abuse its discretion when it declined to order joint custody.

### GIFT OR LOAN

The respondent next argues that the trial court erred when it classified $15,000 as marital property which the respondent claimed was a loan repayment to his parents. During the trial on contested issues, the respondent and his mother both claimed that $8,000 had been loaned to the respondent just prior to his marriage. The money was said to have been given to the respondent by his parents for the purchase of a home. No promissory note was ever executed. The respondent's mother testified there was never any repayment agreement discussed with her son. The petitioner testified she believed the respondent was under no obligation to repay his parents.

In July or August 1989, the respondent withdrew $15,000 from an investment account. At trial, the respondent and his mother claimed the $15,000 was a repayment of the $8,000 loan plus interest. The respondent's mother testified she did not know how her son calculated the interest or why he repaid the loan at that particular time. The trial court determined that the $15,000 was marital property and awarded $7,500 to each party. The court specifically found that the $8,000 was a gift, not a loan.

■ The law is clear that the transfer of property from a parent to a child is presumed to be a gift, and the presumption may only be overcome by clear and convincing evidence to the contrary. (*In re Marriage of Hagshenas* (1992), 234 Ill. App. 3d 178, 186, 600 N.E.2d 437, 443.) After reviewing the record, we find the respondent did not provide any credible evidence to rebut the legal presumption that the $8,000 was a gift from his parents. Moreover, the record clearly shows the respondent withdrew $15,000 in marital funds and belatedly tried to justify the withdrawal as the repayment of a loan. The trial

court did not believe his explanation. Neither do we. The record supports the court's conclusion that the respondent was evasive and untruthful during his testimony. Consequently, we agree with the court's finding that the $15,000 was marital property. Also, we affirm the trial court's division of this asset.

## VALUATION OF MARITAL PROPERTY

The respondent argues the trial court erred in assigning values to the following assets: the marital residence, which was awarded to the petitioner; a duplex awarded to the respondent; and the parties' vehicles.

■ A trial court's determination regarding the value of marital property will not be disturbed on appeal unless it was an abuse of discretion such that no reasonable person could agree with the court's decision. (*In re Marriage of Thomas* (1993), 239 Ill. App. 3d 992, 995, 608 N.E.2d 585, 587-88.) Here, the valuation assigned to the property by the trial court was based upon evidence presented by the parties. In the case of the marital residence, three appraisals were submitted and the court chose the appraisal in the middle. In the case of the duplex, the respondent signed a loan application on November 27, 1989, which stated the value of the duplex was $24,000. Also, at trial, the respondent testified he was receiving $380 per month in rent from the tenants of the duplex. Based on this evidence, the trial court properly rejected the contention of the respondent and his expert that the duplex had no value. We find the court did not abuse its discretion in assigning a $20,000 value to the duplex. Also, the court's valuation of the parties' vehicles was based upon written appraisals submitted by the petitioner. Accordingly, we conclude the trial court did not abuse its discretion in valuing the marital assets described above.

The respondent also argues that the court's apportionment of the marital property was unfair to him. Here, the court awarded the respondent property valued at $156,499 and the petitioner property valued at $151,086.

■ A reviewing court will not disturb the trial court's apportionment of property absent an abuse of discretion such that no reasonable person would take the view adopted by the court. (*Thomas*, 239 Ill. App. 3d at 996, 608 N.E.2d at 588.) Our review of the record reveals no abuse of the trial court's discretion either in its valuation of the marital property or in its division of the marital property.

## CONCLUSION

For the reasons previously indicated, we modify only that portion

of the judgment of the circuit court of Rock Island County which failed to classify as marital property the future book royalties from four books written by the petitioner during the marriage. We hold the future book royalties are marital property subject to division. Accordingly, we modify the judgment to provide that the petitioner is awarded 75% of the royalties received from the four books after the date of the dissolution. The respondent is awarded 25% of these royalties. The respondent's award shall be computed based upon the royalties received by the petitioner minus her income tax liability as previously delineated in this opinion. In all other respects, the judgment is affirmed.

Affirmed as modified.

SLATER, P.J., and STOUDER, J., concur.