Opinion issued February 27, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00369-CV




RICHARD H. ALSENZ, Appellant

v.

MARJORIE SUE ALSENZ, Appellee




On Appeal from the 310th District Court
Harris County, Texas
Trial Court Cause No. 00-28446




O P I N I O N

We are asked to determine whether the trial court’s division of property
pursuant to a divorce between appellant, Richard H. Alsenz, and appellee, Marjorie
Sue Alsenz, was just and proper. In an issue of first impression, we must decide
whether royalty payments received during marriage from inventions patented before
the marriage should be classified as community or separate property. 
Richard contends: (1) we should abate this appeal and direct the trial court to
make findings of facts and conclusions of law; (2) he is entitled to a new trial because
Sue did not disclose on her inventory a $39,565 accounts-payable claim; (3) the trial
court mischaracterized his separate property as community property; and (4) the trial
court abused its discretion in (I) awarding Sue 60% of certain assets, (ii) reimbursing
Sue 50% of community funds that Richard lost in stock market day trading, and (iii)
reimbursing Sue 50% of community funds spent on Richard’s car. 
We reverse and remand.
Factual & Procedural Background
Richard holds a master’s degree in physics. He is an inventor who is
considered an expert in the field of refrigeration; he has invented and patented more
than 35 devices that improve electronic refrigeration. In 1975, Richard founded
Altech Controls, Inc. to develop and market his inventions. He is currently the
president and majority shareholder of Altech, and has assigned all of his patents to
the company. Some of these patents result in marketable products; others do not.
Richard and Sue married in 1996. Shortly after the marriage, Altech hired Sue
as a consultant. Sue formed the “MSA” corporation to receive her salary from Altech
plus income from items she sold on EBay, an internet auction site. Sue and Richard
had no joint bank accounts or joint credit cards; each deposited their income into
separate bank accounts.
Neither the marriage nor the business fared well. The record is replete with
instances of marital discord. The record also reflects that, by 2000, Altech’s sales
decreased from $4 million to $1.5 million, its employees decreased from 37 to 12, and
the remaining employees took pay cuts. 
In addition to drawing a salary from Altech, Richard receives royalties of 4
percent of the gross sales of products developed from his inventions. During his
marriage to Sue, Richard received $706,730.56 in royalties from the sales of devices
he invented, patented, and assigned to Altech before the couple married. Richard
deposited these royalties into his separate bank account. None of the inventions he
developed during his marriage to Sue is currently generating royalties. Whether any
of these inventions will generate royalties in the future depends upon several factors,
including Altech’s financial means to develop a product from the invention and the
ability to market it successfully. Sue has not asked for a share of any future royalties
from the inventions patented during the marriage.
Richard petitioned for divorce in June 2000. In a pretrial ruling, the court
declared Richard’s royalty income to be community property. In January 2001, after
a 4-day bench trial, the court granted the parties a no-fault divorce decree, granted
Sue’s request for a protective order, and divided the property unequally. Richard and
Sue agreed on a more practical property division, stipulating to a calculation that
recognized the nature and value of their respective reimbursement claims, and the
trial court incorporated these agreed changes into its final decree.
The trial court did not file requested findings of fact and conclusions of law
and denied Richard’s motions for new trial and to vacate the decree. While this
appeal was pending, Richard and Sue entered into a partial Rule 11 settlement
agreement regarding the marital residence. Tex. R. Civ. P. 11. Sue relinquished her
interest in the house and promised to execute a special warranty deed in exchange for
recovery of her personal property.
As a threshold matter, we address Sue’s argument that the agreements reached
between the parties after the divorce decree was issued act as a bar to Richard’s
complaints on appeal. She cites no authority to support her contention that the partial
agreement operates as a consent judgment. She likewise cites no authority to show
that Richard waived his right to complain about certain aspects of the property
division because the parties were able to agree about other aspects of the division. 
We reject these arguments, and turn to Richard’s appellate issues.
Findings of Fact and Conclusions of Law
In issue one, Richard argues that the trial court erred in not making requested
findings of fact and conclusions of law. He contends that he has been forced to guess
at the trial court’s basis for its rulings. A trial court’s failure to file findings of fact
and conclusions of law is presumed reversible, unless the record affirmatively shows
that the requesting party was not harmed by their absence. Ternery v. Tenery, 932
S.W.2d 29, 30 (Tex. 1986). If a party is prevented from presenting his case on
appeal, he has been harmed. Id. 
Although Richard contends that the trial court’s rendition and decree are
confusing and that he cannot discern what amounts were allowed for the parties’
reimbursement claims, the record does not support this contention. The attachments
to the decree clearly identify the nature and source of all of the couple’s financial
assets and debts, their claims for reimbursement, and the proportion of the court’s
division. Thus, it is possible to follow each asset, claim, and debt from its inception
to its ultimate disposition. Moreover, Richard does not appear to have had any
problem presenting his case on appeal. Accordingly, we conclude that he has not
been harmed by the absence of findings of fact and conclusions of law.
We overrule issue one.
Royalty Payments
In issue three, Richard contends the trial court erred by characterizing the
royalty payments he received on his patents during the marriage as community
property instead of separate property, thus divesting him of his separate property. A
spouse’s separate property consists in part of property owned or claimed by the
spouse before marriage. Tex. Fam. Code Ann. § 3.001(1) (Vernon 1998). 
Community property consists of property other than separate property that is acquired
by either spouse during the marriage. Tex. Fam. Code Ann. § 3.002 (Vernon 1998). 
The characterization of property as either “community” or “separate” is determined
by the inception of title to the property. Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex.
2001); Smith v. Buss, 144 S.W. 529, 532 (Tex. 1940). Inception of title occurs when
a party first has the right of claim to the property. Strong v. Garrett, 224 S.W.2d 471
(Tex. 1949); Wierzchula v. Wierzchula, 623 S.W.2d 730, 731 (Tex. Civ.
App.—Houston [1st Dist.] 1981, no writ).
No Texas case has addressed when inception of title to patent rights occurs. 
Arguably, inception may occur at any of three times: (1) when the concept is
sufficiently developed to generate a plan to build the invention; (2) when the
invention is actually built; or (3) on the effective date of the patent. 2 Valuation &
Distribution of Marital Property § 23.07[2] (Matthew Bender & Co. ed. 1997). 
However, this is not a question that this Court need decide today. All three of these
steps occurred before Richard’s marriage to Sue. Thus, inception of title to Richard’s
patents clearly occurred before marriage and the inventions are Richard’s separate
property. Tex. Fam. Code Ann. § 3.001(1). Rather, we address whether the royalty
payments from those inventions received during the marriage should be classified as
community or separate property, another issue as yet unresolved by any court.
Property possessed by either spouse on dissolution of marriage is presumed to
be community property. Tex. Fam. Code Ann. § 3.003 (Vernon 1998). To defeat
this presumption, a spouse must establish by clear and convincing evidence that
property is separate property. Id. The record does not reflect whether the royalties
paid to Richard during the marriage were kept in a separate account or spent on
community expenses. Even assuming Richard could trace these funds, however, we
are not convinced that the royalty payments were separate property.
In general, income produced from separate property is considered community
property. Arnold v. Leonard, 273 S.W. 799, 803 (Tex. 1925). This is usually true
regardless of the nature of the separate property, whether the separate property
generating income is stock or shares in a corporation, a trust, real estate, livestock,
or other assets. See Smith v. Lanier, 998 S.W.2d 324, 332 (Tex. App.—Austin 1999,
pet. denied) (cash dividends on separately held stock are community property);
Ridgell v. Ridgell, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi 1997, no pet.)
(income from trust is community property); McElwee v. McElwee, 911 S.W.2d 182,
188-89 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (rental payments, crops,
timber are community property); Gutierrez v. Gutierrez, 791 S.W.2d 659, 664-65
(Tex. App.—San Antonio 1990, no writ) (offspring born to cattle during marriage are
community property); Harris v. Harris, 765 S.W.2d 798, 802 (Tex. App.—Houston
[14th Dist.] 1989, writ denied) (profit-sharing distributions are community property). 
Sue argues that the royalties here are in the nature of such income.
An exception to the general rule that income from separate property is
community property concerns oil-and-gas royalties. Because such royalties are
payment for the extraction of the separate property, the royalties are also considered
separate property. Norris v. Vaughn, 260 S.W.2d 676, 679 (Tex. 1953). Richard
argues that the royalties paid on a patent are equivalent to oil-and-gas royalties
because the value of a patent diminishes over time. We must decide whether the
income stream generated from intellectual property should be treated under the
general rule or in the same manner as oil-and-gas royalties. 
Intellectual property is the set of legal rights to an expressed idea—it is
property that results from the fruits of mental labor. Richard R. Orsinger & David G.
Henry, Intellectual Property, New Frontiers in Marital Property Law A1-1(1999). A patent is the grant of a property right from the government to exclude
others from making, using, or selling one’s invention and includes the right to license
others to make, use, or sell it. Id. Like other intellectual property, including
copyrights and trademarks, the value of a patent stems from the income that can be
generated from that right. Like oil and gas royalties, a patent has a finite life. 
However, like the income generated from separate property, such as land or a trust
fund, the body of the patent is never entirely depleted.
The life of each of Richard’s pre-marriage patents is 17 years.


 Although a
patent may be renewed, the likelihood is that, after the patents expire, the income
stream will greatly diminish because competing products may arise or new
technology may supplant Richard’s inventions. The patent rights vested in Richard
before marriage, and assignment of the patents to Altech does not alter their nature
as separate property. 
It is unquestionable that, had these patents been taken out during the marriage,
the patents and the income they generated would be community property. In this, we
would join other jurisdictions in which the courts treat the income from intellectual
property created during marriage as community property. See, e.g., In re Monslow,
912 P.2d 735, 747 (Kan. 1996) (“Video on Demand” concept created during marriage
is community property); accord Rodrigue v. Rodrigue, 218 F.3d 432, 443 (5th Cir.
2000) (wife entitled to half interest in net benefits resulting from copyrighted works
created during marriage); In re Perkel, 963 S.W.2d 445, 451 (Mo. Ct. App. 1998)
(computer software written by husband is community property); Curtis v. Curtis, 256
Cal. Rptr. 76, 78 (Cal. Ct. App. 1989) (future residuals from performances during
marriage are community property); In re Worth, 241 Cal. Rptr. 135, 137 (Cal. Ct.
App. 1987) (artistic work created during marriage is community property). 
Although we recognize that the foregoing cases deal with intellectual property
created during marriage, we note that two courts have awarded a spouse an interest
in the revenue stream generated by intellectual property the other spouse created
before marriage when the spouse contributed to the success of the resulting product. 
See Teller v. Teller, 53 P.2d 240, 254 (Haw. 2002) (rights to trade secrets vested
before marriage but revenue stream awarded to both spouses); McDougal v.
McDougal, 545 N.W.2d 357, 358 (Mich. 1996) (although patents issued before
marriage, both spouses awarded income generated from patents). We are persuaded
that this is the correct approach to take here, regardless of whether the spouse makes
a contribution to the generation of an income stream. We go farther in holding that
a spouse is entitled to an interest during marriage in the revenue stream from
intellectual property that was created by the other spouse before marriage.
Community property has been defined as “all property and pecuniary rights
obtained by, or in the name of, either spouse after the marriage, by toil, talent, thrift,
energy, industry, or other productive faculty, and all the rents, issues, profits, fruits,
and revenues of separate property.” Logan v. Logan, 112 S.W.2d 515, 525 (Tex. Civ.
App.—Amarillo 1938, no writ). Both “community property” and “revenue” are
broad, general terms. “Revenue” has been defined as “[r]eturn or yield, as of land;
profit, as that which returns or comes back from an investment; the annual or
periodical rents, profits, interest, or issues of any species of property, real or personal;
income of individual corporations, government, etc. Black’s Law Dictionary
1185 (5th ed.1979). We hold that the income stream generated during the marriage
from Richard’s inventions patented before the marriage was a “revenue” and a “fruit”
of his separate property; therefore, we hold that it was community property. The trial
court did not err in so finding. 
We overrule issue three.
Unequal Division of Property
In issue four, Richard challenges the award of 60% of the community assets to
Sue and 45% of the debts to her. He echoes his complaint about being unable to
determine the reasons for the trial court’s ruling without findings of fact. As Sue
points out, however, the unequal division is supportable by more than one theory
based on the facts in the record. 
Section 7.001 of the Family Code provides: “In a decree of divorce or
annulment, the court shall order a division of the estate of the parties in a manner that
the court deems just and right, having due regard for the rights of each party and any
children of the marriage.” Tex. Fam. Code Ann. § 7.001 (Vernon 1998). In making
a just and right division of the community estate, broad discretion is given to the trial
court; this division will not be reversed on appeal unless the complaining party shows
that the trial court clearly abused its discretion. Murff v. Murff, 615 S.W.2d 696, 698
(Tex.1981).
The test for whether the trial court abused its discretion is whether the court
acted arbitrarily or unreasonably. See Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). It is the duty of the appellate court to presume that
the trial court properly exercised its discretion in dividing the marital estate. Murff,
615 S.W.2d at 699. In Murff, the Texas Supreme Court set forth factors a trial court
may consider in dividing the marital estate. These factors include: (1) the education
of the parties; (2) their relative earning capacity; (3) the size of their separate estates;
and (4) the nature of the community property. Id.
All of these factors favor the award of a greater share of the community assets
to Sue. Richard has a master’s degree in physics, while Sue’s psychology degree was
rendered meaningless when her school lost its accreditation. Richard’s earnings have
historically been higher than Sue’s; moreover, his earning capacity is greatly
enhanced by his ability to invent new products, from which he can earn royalties in
addition to a salary. Richard’s separate estate is much larger than Sue’s. The bulk
of the community estate is in real property, not in liquid assets. Finally, there is
evidence in the record indicating that Richard verbally and physically abused Sue. 
This, too, is a factor favoring the disproportionate award. See Twyman v. Twyman,
855 S.W.2d 619, 625 (Tex. 1993). 
We hold that the trial court did not abuse its discretion in awarding Sue a
higher percentage of the community property and a lower percentage of responsibility
for the community debts.
We overrule issue four.
Funds Lost in Day Trading
In issue five, Richard challenges the legal and factual sufficiency of the
evidence to show that community funds were expended or loaned to Datek (Richard’s
day trading account) or lost as a result of day trading. Richard further contends that
the award was based on an undetermined amount of losses. Thus, he contends the
trial court abused its discretion in reimbursing Sue. In her response brief, Sue focuses
solely on the source of the Datek funds, i.e., only on whether the funds used in day
trading were separate or community funds. The nature of these funds, however, is not
the issue before us. Rather, the issue is whether the $35,000 reimbursement was
equitable.
A party may bring a claim for reimbursement of payments by one marital estate
to satisfy unsecured liabilities of another marital estate. Tex. Fam. Code Ann. §
3.408(b)(1) (Vernon Supp. 2002). A trial court resolves claims for reimbursement
under equitable principles. Id. at § 3.408(c). Permissible reimbursement may run
from community estate to separate estate, from separate estate to community estate,
and from separate estate to separate estate. See Dakan v. Dakan, 83 S.W.2d 620, 627
(Tex. 1935). A trial court’s discretion in evaluating a claim for reimbursement is as
broad as that discretion exercised by a trial court in making a just and proper division
of the community estate. Penick v. Penick, 783 S.W.2d 194, 198 (Tex. 1988). 
In reviewing legal insufficiency points, the reviewing court considers only the
evidence and inferences, when viewed in their most favorable light, that tend to
support the judgment and disregards all evidence and inferences to the contrary. 
Davis v. City of San Antonio, 752 S.W.2d 518, 522 (Tex. 1988). If there is more than
a scintilla of evidence to support the judgment, the no-evidence challenge fails. Smith
v. Smith,836 S.W.2d 688, 691 (Tex. App.—Houston [1st Dist.] 1992, no writ). In
reviewing factual insufficiency points, the reviewing court must examine all of the
evidence. Id. After considering and weighing all of the evidence, we will set aside
the judgment only if the evidence is so weak, or the finding is so against the great
weight and preponderance of the evidence, that it is clearly wrong and unjust. Id. 
Richard testified that he lost some funds in the Datek account but transferred
other amounts to satisfy the couple’s obligations. Sue testified that Richard used two
income tax refunds—one for $20,000 and the other for $24,000—from their joint tax
return to fund the Datek account. She also testified that the couple took out a second
mortgage for $60,000 that was intended to pay certain obligations but was, instead,
lost in day trading. Richard testified that the value of the Datek account at the time
of trial was roughly $600. The only income tax return in the record, from 1996,
shows a $30,000 short-term capital loss carryover from 1995. The four-year summary
of Richard’s, Sue’s, and MSA’s bank accounts reflect total deposits of $38,307,
$10,000, and $8,000 respectively into the Datek account. 
In sum, the testimony alleges that a total of $104,000 was directed into the
Datek account, but the bank records show that a total of $56,307 was deposited into
the Datek account. The trial court reimbursed the community $35,000—an amount
evidently based on an assumed loss of $70,000. We are unable to reconcile these
amounts, and there is not sufficient information in the record that would permit us to
reconcile them. 
In her pleadings, Sue contended that Richard’s separate estate was unjustly
enriched by community funds; in her proposed findings of facts and conclusions of
law, she sought a finding that Richard had wasted community funds. In so doing, Sue
invoked the court’s equitable power. We do not question the propriety of the trial
court’s decision to reimburse the community for funds lost in day trading. However,
given the paucity of the evidence, we hold the trial court abused its discretion in
awarding the amount of $35,000 to Sue as reimbursement, because the amount of the
day trading losses is neither adequately documented nor discernable on appeal.
We sustain issue five.
The 1988 BMW Automobile
In issue six, Richard contends the trial court erred in reimbursing Sue half of
the money he spent on his 1988 BMW automobile. Under Texas law, the community
estate is entitled to reimbursement for community property funds used to enhance the
separate property of one of the spouses. Anderson v. Gilliland, 684 S.W.2d 673, 675
(Tex.1985). The amount of reimbursement is measured by the enhanced value to the
benefitted estate. Id. A trial court has very broad discretion in evaluating a claim for
reimbursement. Penick, 783 S.W.2d at 198. 
The couple owned two cars. Richard characterizes the 1988 BMW as a “family
car” and asks this court to take judicial notice of the principle that ordinary family
expenses are not reimbursable. We agree that, generally, there is no right to
reimbursement for costs of living. Norris v. Vaughan, 260 S.W.2d 676, 683 (Tex.
1953). We also note, however, that this car was Richard’s separate property and was
awarded to him as part of the division of the property. 
What troubles us is the lack of evidence in the record concerning the funds
expended for the car, regarding both the amount spent and the purpose of the
expenditure. Richard testified to $4,000 spent, and Sue testified that $10,500 was
spent. There is no invoice or cancelled check in the record to verify the precise
amount. Further, there is no evidence that the funds were expended to “enhance” the
value of the car, as opposed to simply repairing or maintaining it. Finally, there is no
evidence to show if, or how much, the value of the BMW was enhanced, which is the
measure by which we evaluate a claim for reimbursement. See Anderson, 684 S.W.2d
at 675. In the absence of such evidence, we conclude that the trial court abused its
discretion in reimbursing the community estate for funds spent on this car.
We sustain issue six.
Fraud on the Community
In issue two, Richard contends Sue committed fraud on the community because
she did not list a $39,000 accounts payable claim on her inventory. After the divorce,
Sue demanded $39,000 in unpaid salaries that she earned working at Altech during
the marriage. Although the trial court characterized this dispute as one between the
corporations (Altech and MSA), not the parties, we do not agree. MSA was
specifically incorporated to receive Sue’s Altech salary, a community asset. 
However, although it is true that Sue did not disclose this (potential) asset on her
inventory and did not mention it when asked about MSA’s inventory, the record
before us does not fully support the contention of fraud. The monies were payable
to Sue from Richard’s company, and the invoices that were allegedly partially paid
were submitted to the company well before the divorce proceedings; thus, Altech and
Richard had prior notice of these unpaid monies. The record of the motion for new
trial hearing includes remarks from Sue’s counsel to the trial court that counsel for
both parties discussed these unpaid monies, even though the amounts were not
itemized as part of formal discovery. Whether the claim against Altech is valid is an
entirely different issue from the issue of whether the money should have been
considered by the trial court when dividing the assets. It is also distinct from the
fraud issue. Nevertheless, the $39,000 accounts payable claim is an asset that must
be disposed of by the trial court.
Resolution of this issue is not necessary, given our disposition of issues five
and six; therefore, we decline to address it further.
We affirm the trial court’s ruling that the income from Richard’s patents was
community property. We reverse those portions of the trial court’s decree
reimbursing the community estate for expenditures made on the BMW and for day
trading losses. We remand the cause for consideration of the fraud claim and a re-division of the marital estate in accordance with this opinion and the parties’ previous
agreements.
 
 
 
 
                                                             Evelyn V. Keyes,
                                                             Justice
 
Panel consists of Justice Hedges, Keyes, and Duggan.