IOANNIS V. YANNAS *vs.* STAMATIA FRONDISTOU-YANNAS
(and a companion case[1]).

Middlesex. May 7, 1985. — August 20, 1985.

Present: WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Divorce and Separation,* Custody of child, Division of property. *Probate Court,* Guardian ad litem. *Evidence,* Expert opinion.

This court rejected an assertion by a party to a divorce proceeding that, in matters of custody of minor children, the law of the Commonwealth favors or should presumptively favor joint physical custody. [708-710]

In a divorce proceeding in which custody of the parties' two minor children was in issue, the evidence warranted the judge's conclusion that awarding physical custody to the wife was in the best interests of each child. [710]

Discussion of the criteria by which a judge determines how the best interests of minor children of divorced parents will be protected in deciding under G. L. c. 208, § 30, whether to allow the parent having physical custody of the children to remove them from the Commonwealth. [710-712]

A judge in a divorce proceeding, having awarded physical custody of the parties' two minor children to the mother, was warranted in determining under G. L. c. 208, § 30, that the wife's removal of the children from the Commonwealth to Greece would be in the best interests of the children, by his findings that the move to Greece would benefit the custodial parent, financially, emotionally, and socially; that the children would benefit from that advantage and from the strengthening of family and cultural ties in Greece; that excellent schooling would be available to them; and that reasonable alternative arrangements for visitation with their father would be arranged. [712]

The record in a divorce proceeding provided no factual premise for the husband's contention that, because the parties' two minor children did not want to leave the United States, the wife's removal of the children to Greece would violate their constitutional rights. [712-713]

In a divorce proceeding in which custody of the parties' two minor children was in issue, the judge did not err in admitting in evidence the report of the guardian ad litem he appointed under G. L. c. 215, § 56A, to

---

[1] Stamatia Frondistou-Yannas *vs.* Ioannis V. Yannas.

make a report concerning the care and custody of the minor children, where the guardian testified and was available for cross-examination, and where the judge did not rely solely on her recommendation. [713]

In a divorce proceeding, the husband did not show that he was prejudiced in any respect by a report allegedly given the judge by a family service officer. [713-714]

In a divorce proceeding, the judge did not abuse his discretion in not accepting the conclusions of a psychologist appointed as an expert under Mass. R. Dom. Rel. P. 35, on motion of the husband, to examine the wife. [714]

An award of alimony to the wife in a divorce proceeding was warranted by evidence and by the judge's consideration of relevant factors mandated by G. L. c. 208, § 34. [714]

In making a division of marital assets, the judge in a divorce proceeding was not obliged to place a value on the husband's royalties, patents, or copyrights. [714]

COMPLAINTS for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 14, 1982, and October 22, 1982, respectively.

The cases were heard by *James M. Sweeney,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Edward Mahlowitz (Philip S. Shaw* with him) for Ioannis V. Yannas.

*Monroe L. Inker (Margot A. Clower* with him) for Stamatia Frondistou-Yannas.

WILKINS, J. Each party to these cross actions for divorce has appealed, challenging aspects of the divorce judgment but not the dissolution of the marriage. The most significant issue is whether the judge, having awarded physical custody of the parties' two minor children to the wife, properly authorized her to take the children to Greece to live. The judge's task was to assess the effect of such a move on the children in circumstances in which the move would clearly benefit the wife but would adversely affect the father's right to visit his children regularly.

On October 16, 1984, substantively identical judgments were entered granting a divorce nisi in the cross actions for divorce on the ground of the irretrievable breakdown of the marriage

(G. L. c. 208, § 1B [1984 ed.]). The judge granted each parent "joint legal custody" of the minor children and the wife "physical possession of the minor children." He further allowed her to remove the children to the Republic of Greece. He gave the husband the right to take the children for six weeks each summer, for one week at Christmas time, and for one week each spring, with the cost of transportation to be shared equally. He awarded the wife $300 a week as alimony and child support. He also made rulings concerning the distribution and division of property. Each party has appealed. We allowed the husband's application for direct appellate review. The husband challenges the custody award, the authorization of the wife to take the children to Greece, and the award of alimony. The wife challenges the property division. There was no error. We affirm the judgments.

In findings, carefully documented by references to the transcript and exhibits, the trial judge made findings of fact concerning custody, the wife's request to remove the children to Greece, and the division of property. The husband and wife were married in Athens, Greece, in 1968. A daughter Tania was born in Massachusetts in September, 1973, and a son Alexis was born here in May, 1977. The husband was born in Greece, came to this country as a student in 1953, and became a citizen of the United States in 1976. The wife was also born in Greece. She came to this country in 1969, following their marriage, and also became a citizen of this country in 1976. Following his graduation from Harvard College in 1957, the husband studied at the Massachusetts Institute of Technology (M.I.T.) and at Princeton University, from which he received a Ph.D. degree in physical chemistry in 1966. He became an assistant professor at M.I.T. in 1966, received tenure in 1973, and became a full professor at M.I.T. in 1978. He is a world renowned scientist and is the co-inventor of an artificial skin designed for the treatment of severe burn victims.

The wife, after studies in Greece, received a degree in civil engineering from M.I.T. in 1970 and in 1973 received a master's degree from M.I.T.'s Sloan School of Industrial Management and a doctoral degree in civil engineering from M.I.T.

She was the first woman to become an assistant professor of civil engineering at M.I.T., but in 1978 her appointment was not renewed. She is an internationally recognized expert on the properties of concrete and construction economics.

The parties' continued association with Greece and their Greek heritage is substantial. The children (as well as the parents) are fluent in both English and Greek. The live-in babysitters the family hired to help with the children were Greek and spoke Greek almost exclusively. The children receive five hours of Greek instruction each week and have Greek and American books and records. From 1975 to 1981, inclusive, the family traveled to Greece each summer, except for the year in which Alexis was born. The husband has maintained close association with Greece. He traveled to Greece every summer between 1969 and 1981. He has an interest in an apartment and a cemetery tomb in Athens and has often lectured in Athens.

The family of each parent holds high social status in Greece. The wife is the only child of an illustrious Greek couple. Her father was a hero in the war against the Nazis and later against the Communists. He served as chairman of the Joint Chiefs of Staff in the Greek Military, as a member of Parliament, and as Secretary of Transportation. Her mother was one of the first women to earn a law degree in Greece. The wife has been an officer in the Greek National Science Foundation and a consultant to the Greek Secretary of Public Works. She is a licensed engineer in Greece, but not in this country. She was the first woman to be a member of the board of directors of the largest corporation in Greece. She has been offered employment in Greece that will provide her with opportunities for professional growth and with greater financial security than she could obtain in this country. Her search for employment in Massachusetts has been in vain. If she lives in Greece, she will be entitled to a pension from the Greek government and will be able to use real estate and personal property she owns there. There was evidence that Greek courts would enforce custody orders entered in this country.

The children have been accepted at an outstanding school in Greece, which their father attended. Tania attended that school and performed well when the family was in Athens during one of her father's sabbatical years (1979-1980). Each child makes friends easily and is an excellent student. They are acquainted with Greek culture. Both grandmothers live in Greece, as do various cousins, aunts, and uncles. The children have expressed a wish to continue to live in Newton and vacation in Greece in the summer. With permission of counsel, the judge visited the children in their home and talked with them at length. He made no findings as to what the children told him.

From his basic findings and from his consideration of the evidence, the judge arrived at several more general conclusions. If the wife is unemployed, the parties' standard of living will fall when they attempt to set up two households. The husband and wife are responsible and can communicate in regard to the children. The wife feels an increased sense of personal security in her native land. A move to Greece will enhance the children's exposure to their Greek heritage and language. The children will not encounter a language barrier or "culture shock" from such a move. The continual stress on the wife and her unhappiness if she must stay here will probably have an adverse effect on the children. The wife has stated that she will make every effort to see that the children continue to be close to their father.

The judge concluded that the wife is a very nurturing and loving mother, and was the parent who took care of most of the daily housework and the children's physical needs. He found, therefore, that the wife had assumed primary responsibility for the children's care. He also found that both parents love their children, and that the husband has taken an active interest in them, particularly since the parties filed for divorce.

1. The husband argues that there should be a presumption in favor of joint custody of minor children and that the trial judge failed to recognize that presumption. There is no such presumption in the broad terms asserted. The judge did award joint or shared legal custody, which G. L. c. 208, § 31 (1984

ed.), defines as "a continued mutual responsibility and involvement by both parents in decisions regarding the child's welfare in matters of education, medical care, emotional, moral and religious development." As we have said, he awarded physical custody, or possession of the children, to the wife.

We reject the husband's assertion that the law of the Commonwealth favors or should presumptively favor joint physical custody. Nothing in G. L. c. 208, § 31, supports such a view. Indeed the reference in § 31 to shared legal, as opposed to physical, custody suggests an intention to make a distinction between the two forms of custody. A 1983 proposal that § 31 be amended to provide that "[t]here shall be a presumption that an award of joint custody is in the best interests of the minor child" (1983 Senate Bill No. 2080) was not incorporated that year in the most recent amendment of § 31. St. 1983, c. 695. No State to our knowledge has adopted by judicial decision a presumption in favor of joint physical custody. There is, however, a tendency in this country in favor of joint legal custody. See Folberg, Joint Custody Law — The Second Wave, 23 J. Fam. L. 1, 3-4 (1984).

There is no apparent reason to believe that joint physical custody is presumptively preferable in all child custody disputes. The matter of physical custody is appropriately left to the judge for determination unfettered by any presumption in favor of joint physical custody. There is also no reason to conclude, as the husband suggests, that joint physical custody is required by constitutional principles of right-to-privacy or due process of law or that a "clear and convincing" standard of proof should be imposed on anyone seeking custody other than joint physical custody.

The judge was warranted in concluding that physical custody in the wife was in the best interests of each child. There was extensive evidence concerning the children's relations with their parents. The judge addressed the needs of the children and considered the physical care that each parent gave to each child. The fact that the evidence might have warranted a different decision on physical custody does not make the judge's determination invalid. The judge's findings of fact were not

clearly erroneous. Mass. R. Dom. Rel. P. 52 (a). *Felton* v. *Felton*, 383 Mass. 232, 239 (1981).

2. The judge properly applied the correct legal standard in determining that the wife could remove the children to Greece. The husband argues that, where there is no question of the fitness of the noncustodial parent and of his or her right to visitation, removal of a child from the Commonwealth should be allowed only in exceptional circumstances. This is the standard applied in New York. See *Weiss* v. *Weiss,* 52 N.Y.2d 170, 175-177 (1981). The judge followed the principles set forth in *Hale* v. *Hale,* 12 Mass. App. Ct. 812, 818-819 (1981), which adopted the less strict standard of *D'Onofrio* v. *D'Onofrio,* 144 N.J. Super. 200, aff'd per curiam, 144 N.J. Super. 352 (1976). The less strict standard, sometimes called the "real advantage" standard, has been followed with variations in most jurisdictions which have considered the issue.[2] As most recently reformulated by the Supreme Court of New Jersey in *Cooper* v. *Cooper,* 99 N.J. 42 (1984), the "real advantage" test is grounded on the "realization that after a divorce a child's subsequent relationship with both parents can never be the same as before the divorce . . . [and] that the child's quality of life and style of life are provided by the custodial parent." *Id.* at 53. Although the best interests of the children always remain the paramount concern, "[b]ecause the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires that the interests of the custodial parent be taken into account." *Id.* at 54.

The Massachusetts removal statute, G. L. c. 208, § 30 (1984 ed.), provides that "[a] minor child of divorced parents who is a native of . . . this commonwealth . . . shall not, if of suitable age to signify his consent, be removed out of this

---

[2] See *Hale* v. *Hale, supra* at 819, and cases cited; *In re Marriage of Brady,* 115 Ill. App. 3d 521, 523 (1983) ("legitimate reason"); *In re Marriage of Frederici,* 338 N.W.2d 156, 160 (Iowa 1983); *Jordan* v. *Jordan,* 50 Md. App. 437, 446 (1982); *Bielawski* v. *Bielawski,* 137 Mich. App. 587, 593 (1984); *Matter of Ehlen,* 303 N.W.2d 808, 810 (S.D. 1981) ("good reason"). See also *Auge* v. *Auge,* 334 N.W.2d 393, 399 (Minn. 1983) (noncustodial parent has burden of proof of showing that removal is *not* in best interests of the child).

commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders." The words "upon cause shown" mean only that removal must be in the best interests of the child (*Rubin* v. *Rubin,* 370 Mass. 857 [1976]; *Hale* v. *Hale, supra* at 815), and thus the central question in this case is how these "best interests" are to be determined.

Cases involving removal of a child from the jurisdiction present difficult choices. Unless one is to apply a fixed but arbitrary rule, the issue can be resolved only on a case by case basis. The effect on the child of any removal is most important. An evaluation of the best interests of the child requires attention to whether the quality of the child's life may be improved by the change (including any improvement flowing from an improvement in the quality of the custodial parent's life), the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent, and the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child.

The interest of the custodial parent in moving must also be assessed. The relative advantages to the custodial parent from the move, the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation are all likely to be relevant considerations. That the move is in the best interests of the custodial parent does not mean that it is automatically in the best interests of the child. Finally, the interests of the noncustodial parent must be considered. If that parent is unfit or has not exercised his or her rights of visitation, the judge's problem is less difficult than in the case of a diligent noncustodial parent. The reasonableness of alternative visitation arrangements should be assessed. The fact that visitation by the noncustodial parent will be changed to his or her disadvantage cannot be controlling.

In this process, the first consideration is whether there is a good reason for the move, a "real advantage." If the custodial parent establishes a good, sincere reason for wanting to remove to another jurisdiction, none of the relevant factors becomes

controlling in deciding the best interests of the child, but rather they must be considered collectively. Every person, parent and child, has an interest to be considered. The judicial safeguard of those interests lies in careful and clear fact-finding and not in imposing heightened burdens of proof or in inequitably identifying constitutional rights in favor of one person against another.

The judge properly recognized the standard to be applied and made findings of fact consistent with that standard. Certainly the move to Greece would be to the advantage of the wife, financially, emotionally, and socially. The children should benefit from that advantage and can strengthen their ties to family and to Greek culture. They will receive excellent schooling in Greece. Additionally, the husband has large blocks of free time, and travels to Greece often. The children can visit this country every year. They will not lose their American citizenship or the opportunity to attend college in this country and to settle here permanently. In these circumstances, it was not an abuse of discretion or an error of law to authorize the wife to remove the children to Greece.

3. The husband argues briefly that removal of the children to Greece would violate their constitutional rights because they do not wish to leave this country. The factual premise for this argument is lacking on the record. The husband relies solely on a finding by the judge that "[t]he children's wishes are to continue to live in Newton, continue at the Spaulding School and vacation in the summer in Greece." Because of his careful references to the record (and the absence of any other possible source shown in this record), we know that in making this finding the judge was relying only on a statement of the wife reported by the guardian ad litem.

That statement, which is set forth in the margin,[3] shows only that the children wanted no change. But change was inevitable — a divorce, sale of the family home in Newton, physical sep-

---

[3] "My kids are very happy kids. They love their life in the United States as well as in Greece. If you ask them what they want, they will tell you they want to continue the life they now have, namely, spending the winters in the United States and the summers in Greece."

aration from one parent, and, unless the wife had significant earnings, a lower standard of living. Even if the views of a child as to where he or she should live have constitutional significance[4] (although generally such views of young children should not be given particular weight [see *Hale* v. *Hale,* 12 Mass. App. Ct. 812, 820 (1981)]), and even if in a custody dispute one parent may properly assert constitutional rights of a minor child,[5] this case does not present the constitutional question. In any event, even if a young child's preference not to leave the country is entitled to recognition as a constitutional right, the child's interest must be considered in conjunction with the rights of the parents and the interests of the Commonwealth. See *Schleiffer* v. *Meyers,* 644 F.2d 656, 663 (7th Cir. 1981). In this case, as we suspect would be true in all cases involving removal of a young child from the country, careful attention to the best interests of the child inevitably results in adequate protection of the child's constitutional (and other) rights.

4. Other objections of the husband may be disposed of briefly. (a) The judge did not err in admitting in evidence the report of the guardian ad litem he appointed under G. L. c. 215, § 56A, to make a report concerning the care and custody of the minor children. *Jones* v. *Jones,* 349 Mass. 259, 264 (1965). The guardian ad litem testified and was available for cross-examination. See *Gilmore* v. *Gilmore,* 369 Mass. 598, 604-605 (1976). The judge unquestionably made his own determination on the issues covered by the report of the guardian ad litem and did not rely solely on her recommendation. We add that it is surprising that the guardian ad litem did not see or talk to the children. (b) A report allegedly given to the judge by a family service officer, commenting on the guardian ad litem's report, appears in the record. It was not an exhibit. It was not docketed in either case. Its origins are obscure. It is doubtful that it should be in the record appendix. That report comments

---

[4] For a thoughtful discussion of the constitutional rights of a child in a custody dispute involving possible removal from the country, see *Schleiffer* v. *Meyers,* 644 F.2d 656 (7th Cir. 1981).

[5] The guardian ad litem was appointed under G. L. c. 215, § 56A (1984 ed.), to make a report to the judge, not to represent the interests of the children.

on the guardian's report. It contains no new factual information. Its status is not that of an improper report to the judge providing information not of record. See *Duro* v. *Duro,* 392 Mass. 574, 580-581 (1984). The husband has not shown that the judge saw the report, that the judge should not receive such a report, or that the judge relied on the report to the husband's prejudice in any respect. (c) The judge dealt properly with the testimony and report of a psychologist appointed as an expert under Mass. R. Dom. Rel. P. 35, on motion of the husband, to examine the wife. The judge was not obliged to permit the psychologist to give his opinion in terms of the best interests of the children, whom the psychologist also saw. The witness did explain why he thought the children should not go to Greece at that time. He was selected by the husband's attorney, and his services were paid for by the husband's health insurer. The husband is simply wrong in saying that the judge ignored the expert's testimony. Especially in light of what was disclosed in the cross-examination of the expert and by other evidence, the judge could disregard the conclusions of the husband's expert. (d) The award of alimony to the wife was warranted by the evidence and by the judge's careful consideration of relevant factors mandated by G. L. c. 208, § 34. The husband's confused argument about the exclusion of evidence of alleged deposits made by the wife to a bank account merits no discussion.

5. The judge did not abuse his discretion in his division of the marital assets. His findings were thorough. He was not obliged to place a value on the husband's royalties, patents, or copyrights. He was warranted in declaring uncertain the value of the husband's patents on artificial skin. The judge could have concluded on the evidence that the present value of the husband's future income from this source was too speculative to consider. The asset was not one which obviously has current value but is difficult to appraise (such as a close corporation).

*Judgments affirmed.*