SUZANNE HOPE TAMMARO vs. KEVIN FRANCIS O'BRIEN.

No. 08-P-1762.

Plymouth. October 8, 2009. - February 11, 2010.

Present: RAPOZA, C.J., DUFFLY, & CYPHER, JJ.

*Divorce and Separation,* Child custody, Modification of judgment. *Minor,* Custody. *Parent and Child,* Custody.

A probate judge hearing a complaint for modification of a divorce judgment, in which a mother sought permission to remove the parties' four children from Massachusetts to New Hampshire, properly denied the father's motion to dismiss, brought on the ground that mother's complaint failed specifically to reference G. L. c. 208, § 30, the statute governing removal from the Commonwealth of children of divorced parents, where the complaint stated clearly that the mother was requesting permission to remove the children from the Commonwealth, and the judge could thus properly treat the complaint as one seeking relief under § 30. [257-259]

In proceedings arising from a complaint for modification of a divorce judgment, in which a mother sought permission to remove the parties' four children from Massachusetts to New Hampshire, the judge's findings amply supported her conclusions that the mother had established good, sincere reasons for wanting to remove to New Hampshire (despite the mother's place of employment remaining in Massachusetts) and that the collective interests of the father, the mother, and the children supported removal of the children from the Commonwealth. [259-262]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on November 14, 2003.

A complaint for modification, filed on June 21, 2005, and a motion to dismiss, filed on December 27, 2005, were heard by *Lisa A. Roberts,* J.

*David P. Sorrenti* for the father.

*Penny Nasios* for the mother.

DUFFLY, J. Within days of the entry of a judgment of divorce nisi, Suzanne Hope Tammaro (the mother) filed a complaint for modification in which she sought to modify the divorce judgment to permit removal of the parties' four children from Massachusetts

to New Hampshire. The trial judge granted the requested relief after a trial, and the defendant father, Kevin Francis O'Brien, appeals. We affirm.

*Background facts and proceedings.* By a judgment of divorce nisi, entered on June 15, 2005, the parties were ordered to comply with the terms of a separation agreement of the same date which provided that the mother was to have physical custody of the four minor children; the parties were to share legal custody.[1] The agreement and judgment set out a "comprehensive physical parenting plan" and also provided for the appointment of a parenting coordinator to assist the parties in resolving parenting issues.[2] On June 21, 2005, the mother filed the within complaint for modification.[3]

At the time of the divorce and the filing of the mother's complaint for modification, both parties resided in Brockton, about three miles apart. The mother lived in an apartment with the

[1]The parties have a daughter who was born in March, 1997, and triplets who were born in July, 2000.

[2]As described by the judge, the parenting plan "sets out a basic year round weekday and alternate weekend visitation schedule for [the father] with the children, makes provisions for holidays and special occasions, for school and summer vacations, for summer camp, and for cancellation of visits."

[3]In addition to requesting permission to remove the children from Massachusetts to New Hampshire, she also requested that the court modify the parties' parenting plan as necessary "to continue permitting the [f]ather to regularly and consistently see the children." A trial was thereafter conducted, and the ensuing modification judgment granted the mother permission to remove the children to Derry, New Hampshire, in June, 2006. The parties were also directed to work with their parenting coordinator to make changes in the parenting plan's schedule of weekday visits between the father and the children beginning in the fall of 2006, and to provide the father visitation with the children up to two times during the week, arranged to minimize the children's commute. Lastly, the judgment provided that, if the parties were unable to reach agreement, either party could submit the issue to the court by complaint for modification.

In his brief, the father represents that, after the children were removed to New Hampshire, the divorce judgment was modified to grant him shared legal *and physical* custody of the children. See *Braun* v. *Braun*, 68 Mass. App. Ct. 846, 853-854 (2007) (discussing the obligations of parties to keep this court apprised of subsequent orders that may affect issues pending on an appeal). We have reviewed the judge's decision, dated August 14, 2007, contained in the parties' appendix to a related appeal, see *Tammaro* v. *O'Brien*, 75 Mass. App. Ct. 1115 (2009), and note that, as to the father's requested change in physical custody, the judge there found: "Since the parties' divorce, the children have resided primarily with [the m]other. . . . The Court declines to change the physical custody arrangement."

children while the father resided in the former marital home. The mother, a consultant in the health care industry, had worked from home since the birth of the triplets and had several clients, including Holy Family Hospital in Methuen (part of Caritas Christi Health Care [Caritas]) and other hospitals located north and west of Boston and in New Hampshire. Although the mother's work as a consultant provided her with flexibility in dealing with the children's schedules, she at times was required to work early morning or late evening hours to complete her work. As a consultant, the mother also had no paid sick or vacation time, health insurance, or retirement benefits.

The father's job as a scout with a major league baseball team required that he travel extensively throughout the country between February and late September or October each year. The father also owns a business through which he organizes, markets, and runs youth baseball and basketball camps during his off-season at different locations in Massachusetts.

In early 2005, several months before the parties' divorce, the mother began discussions with an executive at Caritas concerning the possibility of full-time employment at Holy Family Hospital. At the same time, she began to search for a suitable house to buy north or west of Boston, in which to reside with the children after the divorce. She sought a house that would be within reasonable commuting distance from Methuen, which she considered an "appropriate area" whether she continued her consulting work or worked full time at Holy Family Hospital.[4] The mother testified, credibly the judge found, that she was unable to find a house that met her criteria, including price, despite searching in numerous towns in the Methuen area.

In early April, 2005, the mother saw an advertisement for houses being built in Derry, New Hampshire, that met her criteria. After viewing the site and a model home, and conducting additional research concerning schools and public safety in the area, she signed a purchase and sale agreement on April 7 for a house in the construction stage. Shortly thereafter, the mother informed

---

[4]The judge found that the mother's criteria for a suitable house "included that it be fairly new construction, have central air conditioning . . . [as] [t]wo of the triplets have asthma — one, seriously, . . . four bedrooms, be in a quiet neighborhood with other school aged children, in a good school district, and be in the $450,000 [price] range."

the father that she was considering the purchase of a new house just over the border in New Hampshire. The father informed her that he would not consent to having the children removed from Massachusetts.[5]

On June 3, 2005, the mother was offered a lucrative position, with full benefits, as vice-president for systems communications for Caritas and director of communications for Holy Family Hospital. Although the mother knew that she would be accepting the employment offer from Caritas prior to the time she signed the divorce agreement on June 15, 2005, she did not formally accept the offer until June 27, 2005. Since July, 2005, the mother's primary work site has been in Methuen. However, her other responsibilities with Caritas require her to oversee hospitals in Brockton and Fall River.

On these facts, and others we shall discuss, the judge allowed the mother to remove the children from Massachusetts to Derry, New Hampshire.

*Discussion.* The father argues that the judge (1) lacked the authority to permit removal of the children on a complaint for modification and thus should have granted his motion to dismiss; and (2) failed to fully and fairly weigh the factors for removal. See *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 710-712 (1985).[6]

1. *Motion to dismiss.* Prior to trial, the father moved, unsuccessfully, to dismiss the mother's complaint on the ground that the mother had filed a complaint for modification under G. L. c. 208, § 28, as amended by St. 1985, c. 490, § 1 (which requires a showing of a "material and substantial change" in circum-

---

[5]The mother was aware when she signed the purchase and sale agreement for the home in Derry, and when she later closed on the sale, that she might not obtain the court's permission to remove the children. Consequently, she did not move furniture from her Brockton apartment to New Hampshire and did not inform her landlord or allow her children to visit the property or become involved or invested in the potential move. Indeed, the mother continued to look for suitable property in Massachusetts, and the father supplied the mother with listings of properties in Andover and North Andover, which the mother reviewed but determined did not meet her criteria. The mother testified at trial that if she were not granted permission to remove the children to Derry, she would sell the Derry property.

[6]In the father's brief, he also purports to appeal from a separate judgment of the Probate and Family Court adjudging him in contempt. As the father's notice of appeal makes no reference to that judgment, it is not before us.

stances), rather than a complaint for removal under G. L. c. 208, § 30 (which allows removal of children out of the Commonwealth "upon cause shown" and implicates the so-called "real advantage" standard [see note 9, *infra*]). The father argues that because the complaint for modification failed specifically to reference G. L. c. 208, § 30, the judge was without authority to grant removal.

"The removal from the Commonwealth of children of divorced parents is governed generally by G. L. c. 208, § 30." *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 869 (2006). See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 265 (2001). It has long been held that the court's authority to prohibit or permit removal of children from the Commonwealth by a parent, whether or not divorced, may be found in statutes generally granting our courts the authority to decide the welfare of children. See, e.g., *Briggs* v. *Briggs*, 319 Mass. 149, 153 (1946) (noting that "the judge had the power under G. L. [Ter. Ed.] c. 209, § 37 [care and custody of children of separated parents], and c. 208, § 30, to insert a provision in the original decree prohibiting the removal of the son from the Commonwealth without the consent of his father or the court"), citing *Marshall* v. *Marshall*, 236 Mass. 248 (1920), and *Gallup* v. *Gallup*, 271 Mass. 252 (1930). See also, e.g., *Welker* v. *Welker*, 325 Mass. 738, 744, 746 (1950) (Superior Court's jurisdiction to permit or prohibit removal of child from Commonwealth is found in G. L. [Ter. Ed.] c. 208, § 28, and G. L. [Ter. Ed.] c. 209, § 37). As these early decisions reflect, whether the issue is custody or removal of children, resolution of either requires a judge to determine the interests and well-being of the children.

Numerous decisions reflect that removal cases in Massachusetts have been initiated through complaints for modification. See, e.g., *Hersey* v. *Hersey*, 271 Mass. 545, 547 (1930); *Mason* v. *Coleman*, 447 Mass. 177, 180-181 (2006); *Pizzino* v. *Miller*, *supra* at 867. Although "a request for modification of custody is distinct from a request to relocate," *Rosenthal* v. *Maney*, *supra* at 261, the issues are closely related. Where removal is sought, a judge will be called upon to consider the children's well-being in light of any change in visitation that might result if a move to a distant location is permitted. As long as the complaint for modification provides notice to the opposing party of the relief sought,

it is an appropriate vehicle for requesting removal of children from Massachusetts.

The father's motion to dismiss was properly denied. Although the complaint here does not specifically invoke G. L. c. 208, § 30, it states clearly that the mother was requesting permission to remove the children from the Commonwealth.[7] The judge could properly treat the complaint as one seeking relief under § 30. Compare *Usen* v. *Usen*, 359 Mass. 453, 454 (1971). Cf. *Randall* v. *Randall*, 17 Mass. App. Ct. 24, 28 n.4 (1983).[8]

2. *The* Yannas *factors.* The standard governing the removal of children from the Commonwealth is set out in *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 710-712.[9] See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 265-272; *Wakefield* v. *Hegarty*, 67 Mass. App. Ct. 772, 775-778 (2006). To the extent the father argues that the mother failed to articulate a "good, sincere reason for wanting to remove to another jurisdiction," *Yannas* v. *Frondistou-Yannas*, *supra* at 711, and that the court's subsidiary findings fail to support such a reason, we disagree.

The judge found specifically that the mother had demonstrated good, sincere reasons for the proposed move to Derry. The mother's new employment position, which the judge found

---

[7]The mother used the Probate and Family Court's form complaint for modification, inserting in the space designated that she sought a judgment "*permitting the Mother to remove the children to reside outside of the Commonwealth* of Massachusetts, and making such changes in the parenting plan which are necessary to continue permitting the Father to regularly and consistently see the children." There is no Probate and Family Court form complaint for removal cases. Sample complaints for authorization to remove minor children from the Commonwealth may be found in several leading treatises and practice manuals. See, e.g., Kindregan & Inker, Family Law and Practice § 47:17 (3d ed. 2002); Harvey, Moriarty, & Ryan, Massachusetts Domestic Relations, Form 8G, at 8-79 (4th ed. 2003).

[8]In view of what we have said, there is no merit in the father's contention that even if the mother's complaint was not fatally "defective," the judge was bound to apply in the present case the standard applicable to a complaint for modification. The judge also did not err in admitting evidence of circumstances prior to the date of the parties' divorce. Even in modification actions, a judge is not necessarily precluded from considering matters prior to the earlier judgment. See *Hinds* v. *Hinds*, 329 Mass. 190, 191-192 (1952); *Reum* v. *Brazeau*, 1 Mass. App. Ct. 549, 552 (1973).

[9]Factors to be considered include "whether there is a good reason for the move, a 'real advantage' "; the best interests of the child; and the interests of the custodial and noncustodial parent. *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 711.

presented a "positive change" for the mother "professionally and financially," has a primary work site in Methuen, which is at least ninety minutes (or more) from Brockton. "Although[, the judge found,] it is not inconceivable that [the m]other could find suitable housing close in the Methuen MA area that meets all of her [housing] criteria and is in her price range," the judge specifically found that "she has made a sincere, and good faith, albeit unsuccessful, effort to do so."[10] In the judge's view:

> "The move [the mother] proposes to the Derry House, approximately 10 miles over the border in New Hampshire, is not unreasonable, and has a 'real advantage' for her. The reduction in [the m]other's commuting time from home to work [will] reduce her stress, and enable her to plan her work time more efficiently. It will permit her to spend more time with the children before they go to school, to be more easily accessible to meet the needs of the child/ren that arise during the workday, and, by permitting her to perform more of her work at work, will create more time for her with the children in the evening."

The judge rejected expressly the father's position, advanced at trial, that the mother's goal in planning the move was motivated by a desire to limit or deprive the father of contact with the children. The judge also noted that Derry was not substantially farther from Brockton than other towns within Massachusetts to which the father had suggested the mother might consider moving.[11]

---

[10]The father makes much of the fact that the mother's claim of an inadequate housing supply in the Methuen area in Massachusetts is based on her self-imposed housing criteria and price range. The father states that it was the mother's detailed requirements (see note 4, *supra*) that, in essence, "created any alleged housing shortage." Such assertions overlook the judge's findings that the former marital home in Brockton, in which the father continues to reside, has more than three bedrooms and is valued at $485,000, and that the parties agreed that air conditioning is necessary for the health of one of the triplets. The father also acknowledged at trial that it would be preferable for the children to live on a quiet side street (as opposed to a busy main road) and appears to have acknowledged at one point in the proceedings that it would be preferable for the children to live near the workplace of the primary custodial parent.

[11]As additional support for his position that the mother's request to remove the children lacked sincerity and good faith, the father asserts that the mother "lied" to the court and to him when she entered into a divorce agreement

There was no error in the judge's finding that the mother had established good, sincere reasons for wanting to remove to New Hampshire. That the mother's place of employment remains in Massachusetts does not, in the circumstances, require a different result.

Having determined that the mother had established a good reason for the proposed move, the judge, in deciding the best interests of the children, considered collectively the interests of the father, the mother, and the children. While it is true, as the father asserts, that the judge considered at length the interests of the mother in the removal, she did not ignore the interests of the children or the father. The judge stated that she "ha[d] considered the effect of the proposed move on the emotional, physical, and developmental needs of the children, including whether the quality of the children's lives may be improved by the change (including any improvement flowing from an improvement in the quality of [the m]other's life)." Among other things, the judge noted that the proposed move to Derry would put the children in a new home on a one-acre lot in a quiet neighborhood, close to a new elementary school. In addition, the judge found that "[h]aving their primary care parent so much closer to home and school — approximately 20 minutes rather than approximately 90 minutes — will be beneficial for the children, as well as for the [the m]other." The judge also took into account continuing visitation by the father with the children.[12] The court's findings amply support its judgment permitting the mother

with which she never intended to comply. The judge, however, addressed this point, noting that because of the mother's pending employment opportunity at Holy Family Hospital and the father's scouting schedule, which forced him to cancel all of his summer 2005 weekday visits with the children, the parties' parenting plan was "destined . . . to fail from the outset." Continuing, the judge stated that although the father may not have been aware of the specific details of the impending change in the mother's employment and residence, he knew there was a change in the offing with respect to both and should not have been surprised by the mother's actions after the agreement was signed.

[12]There is no merit in the father's additional assertion that the judge erred by failing to order, or assess the impact of, specific alternative visitation arrangements. The judge found that changes will have to be made in the parenting plan's schedule for weekday contact between the father and the children during his off-season and addressed the parameters of the father's weekday visitation in her judgment.

to remove the children from the Commonwealth to Derry, New Hampshire.[13],[14]

*Judgment affirmed.*

---

[13]Although G. L. c. 208, § 30, requires court approval to remove children of divorced parents from the Commonwealth, as we have said, the overriding concern evident in the statutory scheme involving the care and custody of children is their well-being. Thus, even where a parent does not seek to leave the Commonwealth, we have suggested that "consideration and evaluation of the visitation and other custodial conditions for the child that would result from relocation to a distant part of the State will resemble those applied to removal beyond the State boundaries." *D.C.* v. *J.S.,* 58 Mass. App. Ct. 351, 355 (2003).

[14]On appeal, the father makes passing reference to an argument, apparently made below, that removal to New Hampshire "would result in the Court's loss of jurisdiction which would make it more difficult and costly for the Father to defend/prosecute further actions in this matter." However, he provides no argument or citation to relevant authority, and we do not address the issue. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).