NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-603

S.H.

vs.

H.A.O.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

S.H. (mother) appeals from a judgment of modification permitting H.A.O. (father) to remove the parties' only child from Massachusetts to Texas and denying her request for primary custody.  Discerning no abuse of discretion or error of law in the Probate and Family Court judge's careful consideration of the parties' circumstances, or in her ultimate conclusions, we affirm.

Background.  After a consolidated trial on the parties' complaints for modification and the mother's complaint for contempt, the judge found the following facts.

The parties were married in 2011 in Boston and divorced in 2015.  The mother was initially granted sole physical and legal

custody of the child, born in 2012, subject to the father's parenting time. Six months later, the father was granted "extended parenting time" and temporary legal custody, limited to authority in dealing with the child's medical care.

In 2018, a judgment of modification transferred sole physical and legal custody of the child to the father. The mother was guaranteed the right to receive information about the child's medical care, education, and extracurricular activities, as well as to attend the child's school, camp, and extracurricular events. She was granted parenting time on alternating weekends and alternating Tuesday afternoons. Parenting exchanges were to take place at the child's school or summer camp, or barring those options, at the local police station.

The father filed a complaint for modification in September 2020, seeking permission to remove the child to Texas, alleging that he had better employment opportunities in Texas, that the child's educational situation had become unsatisfactory due to the permanent closure of the school he was attending, that the mother had misused her access to the child's records, and that the mother's financial situation had improved.[1]

---

[1] The father filed a motion for temporary removal in December 2020, asserting that he had a job offer in the Houston area. The motion was denied.

In 2021, the mother filed a complaint for modification requesting the court award her sole physical and legal custody, alleging that the father sought to remove the child to Texas and engaged in other conduct harmful to the child. The mother also accused the father of seeking to alienate the child from her. In 2024, the mother filed a complaint for contempt alleging that the father had violated the terms of the 2018 judgment, including by failing to disclose information about the child's medical care and extracurricular activities, refusing to allow the child to attend school events, and denying the mother her guaranteed parenting time.[2]

The parties have not limited their dispute to this matter, but have also put the child's teachers and health providers in the middle of their conflict. At least seven times, the mother sought the assistance of the local police department in facilitating parenting exchanges. Both the mother and the father have filed reports with the Department of Children and Families (DCF), triggering investigations into alleged abuse and neglect of the child, and have sought or obtained abuse prevention orders against each other under G. L. c. 209A.

---

[2] The judge found the father in contempt on only one issue -- failing to provide the mother with the name and contact information for the child's new therapist. Neither party appealed from the contempt judgment.

The judge found that the animosity between the parties had not cooled and that neither parent was truly willing to foster and support the child's relationship with the other. Considering this difficult dynamic, the judge determined that it would be in the child's best interests to remain with the father, that the father demonstrated he would gain a "real advantage" by moving to Texas, and that the move would be in the child's best interests. Accordingly, judgment issued continuing the father's sole physical and legal custody, permitting removal of the child to Texas, and instituting a new parenting schedule, with the mother responsible for all expenses associated with her travel to Texas for parenting time. The mother appeals.

Discussion. In custody and removal matters, "[w]e review the judgment and the subsidiary findings of fact for abuse of discretion or other error of law." Murray v. Super, 87 Mass. App. Ct. 146, 148 (2015). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 9 (2016), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). In conducting our review, we accept the judge's findings of fact "unless clearly erroneous." Murray, supra. "Although we will not substitute our judgment

4

for that of the probate judge, we will 'scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts.'" Whelan v. Whelan, 74 Mass. App. Ct. 616, 620 (2009), quoting Kelley v. Kelley, 64 Mass. App. Ct. 733, 739 (2005).

1. Removal of the child. "A parent, against the objection of the other parent, may remove a minor child from the Commonwealth 'upon cause shown.'" Rosenwasser v. Rosenwasser, 89 Mass. App. Ct. 577, 580 (2016), quoting G. L. c. 208, § 30. "The words 'upon cause shown' mean only that removal must be in the best interests of the child" (citation omitted). Yannas v. Frondistou-Yannas, 395 Mass. 704, 711 (1985). To make this determination, the judge must undertake a two-part inquiry. See Murray, 87 Mass. App. Ct. at 149, citing Yannas, supra at 710-712. "In this process, the first consideration is whether there is a good reason for the move, a 'real advantage.'" Yannas, supra at 711. "Second, if the real advantage test is satisfied, the judge must consider whether the move is in the best interests of the children." Murray, supra. The mother argues that the trial judge erred in finding (a) that the father had a sincere motive to remove the child from Massachusetts to Texas and (b) that relocation was in the child's best interests.

a.  Real advantage to the father.  To satisfy the real advantage test, the custodial parent must demonstrate "a good, sincere reason for wanting to remove to another jurisdiction." Yannas, 395 Mass. at 711.  "At this stage the judge must consider 'the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation.'"  Miller v. Miller, 478 Mass. 642, 650 (2018), quoting Yannas, supra.

The record amply supports the judge's determination that relocation to Texas presented a "real advantage" for the father. The judge credited the father's testimony that in Texas he and the child could live in a larger home closer to the father's family, and that the father would enjoy higher-paying job prospects in his area of expertise.  Although the father had not yet secured employment in Texas at the time of the trial, the judge found that the father had to turn down two offers for good paying, full-time jobs in his area of expertise in 2020 and 2021, and that he had a good reason to cease his Texas job search until he was in a position to accept an offer.  She could reasonably infer, as she did, that similar jobs would be available after he moved.  See Williams v. Pitney, 409 Mass. 449, 456 (1991) (relocation to California would result in real advantage to mother where she testified to ability to secure better employment there).  "Relocating in order to . . . develop

6

emotional support is a sincere reason, as is the opportunity to improve one's financial circumstances" (quotation and citation omitted).  Rosenwasser, 89 Mass. App. Ct. at 581-582.

The mother argues that the judge overlooked critical evidence and erred as a matter of law in determining that the father had a "sincere motive" to relocate to Texas, emphasizing the judge's seemingly contradictory findings that the father might use relocation to Texas to interfere with the mother's parenting time.  To the contrary, the judge's thorough findings demonstrate extensive consideration of the evidence on both sides, including the father's obstruction of the mother's parenting time, his interactions with school personnel and police, and his refusal to comply with court orders.  The judge recognized that some of her findings reflected the father's inability or unwillingness to foster the child's relationship with the mother, but specifically found that "despite the acrimony between the parties," the father's relocation plan "is not proposed to deprive Mother of contact with [the child]." "The trial judge was in the best position to assess the credibility of the witnesses' testimony and determine the weight afforded it."  Adoption of Frederick, 405 Mass. 1, 10 (1989). We discern no error of law or abuse of discretion in the judge's conclusion that relocation would provide a real advantage to the father.

b. <u>Best interests of the child</u>. Likewise, we see no reason to disturb the judge's determination that relocation would be in the child's best interests. As the judge correctly stated, factors relevant to this inquiry include

> "(1) whether the quality of the children's lives will be improved, including any improvement that may flow from an improvement in the quality of the custodial parent's life; (2) any possible adverse effect of the elimination or curtailment of the child[ren]'s association with the noncustodial parent; (3) the extent to which moving or not moving will affect the [children's] emotional, physical, or developmental needs; (4) the interests of both parents; and (5) the possibility of an alternative visitation schedule for the noncustodial parent" (quotations and citation omitted).

<u>Murray</u>, 87 Mass. App. Ct. at 150. No factor is controlling -- "they must be considered collectively." <u>Yannas</u>, 395 Mass. at 712.

The judge properly examined the effect of relocation on the child's quality of life, finding that benefits to the father, including an increase in household income and proximity to paternal family members with whom the child has already established relationships, would flow to the child.[3] See <u>Miller</u>,

_____

[3] It is true, as the mother points out, that the judge did not make findings regarding the impact of relocation on the child's relationships with the mother's extended family in Massachusetts, including his maternal aunts, except to note that the mother shared an apartment with two of her sisters. However, the mother introduced very little evidence as to the extent and significance of these relationships, and the credibility of her testimony that the child's aunts were "like second parents" to him was impeached by her deposition testimony that she could not recall one sister's address or the town where she lived.

478 Mass. at 656 (parent's "well-paying job" and proximity to "supportive extended family" in new location will indirectly benefit child). On the other hand, the judge found that the mother's protective conduct toward the child "inhibits him from developing independence and socialization appropriate for his age." The judge reviewed evidence about the child's education and related conflicts and concluded that relocation would not disserve the child's needs, and indeed, could improve his educational and social experiences. The mother contends that the judge erred in finding that the school the child would attend in Texas was "suitable," rather than better suited to serve the child's needs. However, even if the judge had found that the child's current school was "better" than the proposed Texas school, it "would 'not compel the conclusion' that" the new school was "not appropriate to the [child's] needs," which is the applicable standard. Rosenwasser, 89 Mass. App. Ct. at 585, quoting Abbott v. Virusso, 68 Mass. App. Ct. 326, 333 n.12 (2007).

The mother also argues that the judge failed to consider the effect of relocation on the child's relationship with her to the extent required under the Yannas factors. We disagree. The judge explicitly recognized that removal might impede or frustrate the mother's exercise of her parenting time with the child, but on balance determined that the financial and familial

9

benefits of removal, coupled with "the reduced likelihood that the bitterness between [the] parents will negatively impact his academic or social life," outweighed the benefits of staying in Massachusetts.

When one parent seeks removal of a child, "the test is not whether there is no impact on the [other parent's] association, but whether reasonable 'alternative visitation arrangements' might achieve ongoing and meaningful contact appropriate to the circumstances." Rosenthal v. Maney, 51 Mass. App. Ct. 257, 271 (2001). The judge explicitly found such an arrangement did exist, and she outlined a parenting schedule guaranteeing the mother parenting time with the child in Texas every third weekend and in Massachusetts for two nonconsecutive weeks every summer, as well as biweekly private video calls. Neither party introduced evidence about the cost or time required for her to exercise parenting time with the child in Texas, so the judge reasoned -- in part because the mother does not pay child support -- that it would be equitable to place the responsibility for these costs on the mother. The judge properly assessed the effects of the move on the child's relationship with his mother, as well as the potential for continued quality contact under a new parenting arrangement. "The fact that visitation by the noncustodial parent will be

10

changed to his or her disadvantage cannot be controlling." Yannas, 395 Mass. at 711.

The judge's findings were far from one-sided, as the mother contends.  They are unlike the findings in Rosenwasser, 89 Mass. App. Ct. at 588, where "the judge abused her discretion by placing disproportionate emphasis on the effect of the move on [one parent's] relationship with the child, while failing to adequately weigh the interests of the [other parent] and the child."  To the contrary, demonstrating that she had thoughtfully considered both parties' perspectives, the judge recognized the father's role in creating an unstable environment for the child and weighed the risk that the father could use relocation to alienate the child from the mother.  The judge also reviewed third-party reports from DCF and the court-appointed guardian ad litem; she ultimately agreed with the general conclusions contained in these reports, but declined to credit many of the reports' findings and recommendations.  The credibility of witnesses, including court-appointed investigators, is a matter within the discretion of the judge. See Pizzino v. Miller, 67 Mass. App. Ct. 865, 876 (2006) ("It was for the judge to decide whether to credit the guardian's report and testimony").  "[W]here the judge rejects that recommendation, the judge should explain his or her reason for doing so."  Imbrie v. Imbrie, 102 Mass. App. Ct. 557, 571-572

11

(2023).  Here, the judge properly explained that the reports were inconsistent, stale, and incomplete.  The judge was therefore entitled to integrate some portions of these reports, but not others, into her findings and conclusions.  This piecemeal approach does not suggest internal inconsistency or error, as the mother argues, but rather, rigorous and attentive reflection on the entirety of the evidence introduced at trial.  The judge considered each parent's interests, but properly did not give these interests controlling weight.  See Yannas, 395 Mass. at 711 ("The effect on the child of any removal is most important").

We are satisfied with the judge's consideration of the Yannas factors.  Because the weight assigned to each of these factors is a matter squarely within the judge's discretion, see Dickenson v. Cogswell, 66 Mass. App. Ct. 442, 452 (2006) ("balancing of the relevant factors in determining the child's best interests . . . involve[s] classic discretionary decision making by the trial judge"), and because the judge's decision was within "the range of reasonable alternatives,"  Hoegen, 89 Mass. App. Ct. at 9, quoting L.L., 470 Mass. at 185 n.27, the judge did not abuse her discretion in concluding that removal would serve the child's best interests.

2.  Custody of the child.  The mother also argues that it is in the child's best interests for custody to be restored to

12

her and that the judge erred in maintaining sole physical and legal custody with the father.  "Awards of custody are made upon a determination of the best interests of the child."  Houston v. Houston, 64 Mass. App. Ct. 529, 535 (2005).  In determining where a child's best interests lie, a judge has broad discretion to consider a range of factors, including expert reports and testimony, and other evidence regarding each parent's fitness and relationship with the child.  See Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996).  Ultimately, "[t]he decision of which parent will promote a child's best interests 'is a subject peculiarly within the discretion of the judge.'"  Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987), quoting Jenkins v. Jenkins, 304 Mass. 248, 250 (1939).

For the same reasons we are satisfied with the judge's analysis of the child's best interests in determining the appropriateness of removal, we discern no error or abuse of discretion in her decision to maintain the current custody arrangement.  It is true, as the mother points out, that the judge admitted the father is apparently "unable or unwilling to foster [the child's] relationship" with his mother, as would be in the child's best interests.  However, the judge made the same finding about the mother.  Where each parent is equally "capable of and committed to caring for" a shared child, the judge is entitled to balance "all of the circumstances . . . to structure

13

a permanent custodial award to serve the best interests of [the child], including" -- to the extent possible -- the child's "continued and substantial involvement with both parents." Custody of Kali, 439 Mass. 834, 848 (2003). Considering both parents' refusal to set aside their animosity toward each other, even for their child's sake, "we cannot say that the judge's resolution of the merits as they stood at the time of trial was an abuse of discretion." Id.

Judgment affirmed.

By the Court (Meade, Massing & Brennan, JJ.[4]),

Clerk

Entered: February 18, 2026.

---

[4] The panelists are listed in order of seniority.