NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-341                                      Appeals Court

PETER CANISIUS, JR. vs. ERIN JOY MORGENSTERN.

No. 14-P-341.

Suffolk.     December 2, 2014. - August 6, 2015.

Present: Rapoza, C.J., Vuono, & Meade, JJ.[1]

Divorce and Separation, Division of property.

Complaint for divorce filed in the Suffolk Division of the
Probate and Family Court Department on November 1, 2011.

The case was heard by Brian J. Dunn, J.

Michael P. Friedman for the husband.
William Sanford Durland, III, for the wife.

RAPOZA, C.J.  Peter Canisius, Jr. (Peter), the former

husband of Erin Joy Morgenstern (Erin), appeals from a judgment

of divorce of the Probate and Family Court. He argues that the

judge erred in treating Erin's vested contractual rights to

future payments resulting from the best-selling novel, The Night

_____

[1] Chief Justice Rapoza participated in the deliberation on
this case and authored this opinion prior to his retirement.

Circus, which she authored, as too speculative for inclusion in the divisible marital estate. He also argues that the judge erred by finding that the parties' contributions to the marital estate were unequal, and making an unequal division of the marital estate based on that erroneous finding.

We fail to discern error in the judge's determination that the parties' contributions to the marital estate were not equal. We agree with Peter, however, that the judge committed an error of law by excluding from the marital estate subject to division under G. L. c. 208, § 34, Erin's contractual rights to future payments arising from her novel. Our review of this issue is de novo. As explained more fully, infra, we vacate the judgment, in part, and remand the matter to the Probate and Family Court for further proceedings consistent with this opinion.

1. Background. Peter and Erin began to live together in August, 2004, some two years prior to their marriage. Early on, they established a pattern that continued throughout their cohabitation and marriage: Erin handled the cooking for the couple while Peter performed the cleaning duties. During this early period, Erin was unhappy with her employment situation and wished to pursue artistic endeavors. After discussing the issue with Peter, the parties decided that they would no longer share equally their living expenses (as they had been) until Erin's income from the arts would allow her to do so. By June, 2005,

Erin had ceased working outside of the creative arts, and by February, 2006, Peter had begun to pay for virtually all of the parties' expenses.  The parties were married on October 13, 2006.

During the marriage, the parties lived a "simple lifestyle" on a limited budget.  Peter, a chemical engineer, worked long hours to pay the parties' expenses, including those expenses directly related to Erin's creative pursuits.  He also paid off Erin's then existing student loan debt.  Erin, for her part, engaged in writing as well as the creation of various pieces of art.  Certain of Erin's writing projects ultimately evolved into the novel, The Night Circus.[2]

In May, 2010, Erin obtained an agent (who provided her with numerous suggestions to improve her novel) and, in November, 2010, the agent negotiated a contract with Doubleday, a division of Random House, Inc., for the disposition of the publishing rights to The Night Circus.  Other rights, including the right to make a movie, were optioned to Summit Entertainment (Summit) in December, 2010.[3]  Although Summit has retained a screenwriter

---

[2] The seeds for The Night Circus were planted shortly before the marriage in certain of Erin's writings.  The novel was primarily worked on and completed during the marriage.

[3] The judge found that there are many forms and amounts of payments that Erin may receive under the terms of the Summit contract.  The judge further found that there is "no participation necessary on the part of [Erin] in regard to . . .

and producer for the movie project, the film has no timetable for production. In 2011, Erin transferred the copyright to The Night Circus to Night Circus LLC, which she owns. Erin received substantial initial payments from both Doubleday and Summit.

As The Night Circus began to find success, the parties' marriage, which had experienced some tension, continued to deteriorate and, in July, 2011, the parties separated. Subsequent to the parties' separation, Erin engaged in significant publicity and promotional work for the novel which, the judge found, was important to the success of the book. Erin continues to build her "brand" by marketing herself "through blurbs and other means, including social media."

By the time of trial on Peter's complaint for divorce, The Night Circus had grossed over $3 million in royalties and between November, 2010, and October 9, 2013 (the last day of trial), Erin received net income derived from The Night Circus

---

[that contract] in order for [the] agreement to continue to have value and [Erin's] participation is unnecessary going forward with respect to the Summit agreement." With respect to the Doubleday contract, that instrument provides that if Doubleday requests Erin's cooperation in promoting The Night Circus, Erin shall be available for such promotional activities at mutually agreed upon times and places. Erin testified that she last attended a book tour event in November, 2012 (although she has been to certain other events).

of $2,853,281.[4]  Nonetheless, the judge found that the gross amount of royalties was decreasing as sales were decreasing. The judge also stated that Erin's future earnings from The Night Circus are unpredictable.  "It may become a highly successful movie, theater production etc., which will provide a large income stream for [Erin] for years to come, or it may not, and [Erin] may have to rely on the past financial success of The Night Circus to support her for a lifetime."[5]

Peter earns approximately $95,000 per year as an engineer. Both parties have retirement plans.  They do not own any real property.  Neither party sought alimony from the other at trial.

2.  The judge's decision.  The judge found that once The Night Circus was accepted in final form by Doubleday, the contract with Doubleday had "value and the full economic value of the contract is dependent only upon how many books are sold

---

[4] This amount does not include royalties from certain sales that would not be payable to Erin by Doubleday until December, 2013.

[5] The judge found that although Erin had done some work (part of it conceptual) on a second novel, she had "barely written" during the two years preceding trial.  Erin's choice of genre for a second novel will have a significant impact on the marketability of that work.  The judge found that if Erin can produce a significant writing sample of a second novel, of the same "type and quality" as The Night Circus, she has the potential of earning a larger advance than she received from The Night Circus.  The judge noted, however, that it is not clear whether Erin will be able to complete a second book and that the success of any such book is not guaranteed.

worldwide.  The Night Circus is marital property."
Nevertheless, the judge stated in his "Conclusions of Law" that
"[t]he Court may properly conclude on the evidence that the
present value of future income of intellectual property is too
speculative to consider, as was the case with patents on
artificial skin.  See Yannas v. Frondistou-Yannas, 395 Mass.
704, 714 (1985)."  Continuing, the judge stated in his
"Rationale:"

> "Wife is the author of The Night Circus which has been
> hugely financially successful due to her talent.  The
> financial success of the work was also enhanced by her
> efforts and abilities in promoting the book.  The book is
> the sole creation of Wife.  Husband admitted that not a
> word of the book is his creation.  However, the court notes
> that it seems clear from the evidence that this work is not
> solely created by the author but rather created by the
> author and a team of others.  In this case, the team was
> her agent, the agent's staff, her editor, her critique
> partner, beta readers and the Husband.  The value Husband
> added, if any, to this editorial process compared to other
> members of the team was minimal.  However, Husband's
> editorial contributions to this book are not his sole value
> to this book.  Husband's contribution to The Night Circus
> began well before a word of this book was written or even
> conceived by Wife.  Husband worked full-time and
> significant overtime to allow the Wife to pursue her dream
> of pursuing a successful career in the arts without the
> concern for putting a roof over her head or food on the
> table.  In a sense, Wife was not a starving artist due to
> Husband['s] efforts to fully provide for both of their
> needs.  Husband also served as an emotional support and
> companion to Wife during the research and writing process
> and his reading of drafts and offering some feedback or
> encouragement in difficult times certainly impacted Wife's
> on-going efforts to produce a marketable manuscript.  It
> would not be equitable in any sense of the word to deny
> Husband a portion of the fruits of this marriage, which in
> this case is The Night Circus.

"...

"The Husband provided Wife with financial and emotional support in her efforts to pursue the creative arts.  Wife then created the world of The Night Circus from her imagination and used her skill (and others) to develop that into a book that has grossed over three million dollars in royalties.  These contributions are not equal.  Therefore, considering all the admissible evidence and inferences reasonable therefrom, the court is persuaded that an unequal division of the marital estate is equitable in this case.  I find after careful consideration of the section 34 factors that payment of [$628,000] from Wife to Husband would be an equitable division of the marital estate."[6]

The judge issued a judgment of divorce on December 19, 2013, which contains provisions that effectuate his stated rationale, including an order directing Erin to make a lump sum payment to Peter of $570,000 (which takes into account previous advancements of attorney's fees to Peter in the amount of $58,000) as "his share of the royalty and book-related earnings she has received to date from the publication of [her] novel . . . ." (emphasis supplied).

3.  Discussion.  a.  Future payments/marital estate.  Peter argues that the judge erred in treating Erin's "vested contractual rights" to future payments resulting from her successful novel as too speculative for inclusion in the marital estate.  Put another way, he states that it was "clear error for

---

[6] The judge also stated, seemingly with reference to Erin's other (often undeveloped) projects, that it would be inequitable forever to wed Erin with Peter as a business partner.

the judge to exclude from the divisible marital estate all
future compensation received by [Erin] after the trial and into
the future under the Doubleday and Summit contracts."[7,8]

General Laws c. 208, § 34, as amended through St. 1990,
c. 467, provides, in part, that the "court may assign to either
husband or wife all or any part of the estate of the other,
including but not limited to, all vested and nonvested benefits,
rights and funds accrued during the marriage . . . ."  In S.L.
v. R.L., 55 Mass. App. Ct. 880, 882-883 (2002), we summarized
the general principles bearing upon the inclusion of an asset or
interest in, or the exclusion of an asset from, the marital
estate:

> "General Laws c. 208, § 34, defines the scope of a
> trial judge's discretion to assign interests in the marital
> estate to the wife or husband, based on a number of

---

[7] We construe the judge's findings, conclusions, and
judgment, as do the parties in their briefs, as excluding from
the divisible marital estate Erin's interest in contractual
rights to future payments.

[8] Peter does not seek any interest in the copyright to The
Night Circus.  In this regard, he cites to Rodrigue v. Rodrigue,
218 F.3d 432, 435 (5th Cir. 2000), cert. denied, 532 U.S. 905
(2001) (conclusion that "an author-spouse in whom a copyright
vests maintains exclusive managerial control of the copyright
but that the economic benefits of the copyrighted work belong to
the community while it exists and to the former spouses in
indivision thereafter," is consistent with both Federal
copyright law and Louisiana community property law).  See Berry
v. Berry, 127 Haw. 243, 256-263 (2012).  Peter has expressly
waived any right in other artistic works created by Erin during
the marriage.  His appeal, as he states, is limited to his claim
to vested interests arising out of The Night Circus.

specified factors. . . . Separate from the division of assets within the estate is the question whether certain assets properly are considered a part of the estate. In making the determination of what to include in the estate, the judge is not bound by traditional concepts of title or property. 'Instead, we have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of § 34.' Baccanti v. Morton, 434 Mass. 787, 794 (2001), quoting from Lauricella v. Lauricella, 409 Mass. 211, 214 (1991). 'When the future acquisition of assets is fairly certain, and current valuation possible, the assets may be considered for assignment under § 34.' Williams v. Massa, [431 Mass. 619,] 628 [2000]. Interests considered too remote or speculative for inclusion within the estate are instead weighed under the § 34 criterion of 'opportunity of each [spouse] for future acquisition of capital assets and income' in dividing the marital property."

See D.L. v. G.L., 61 Mass. App. Ct. 488, 492-493 (2004).

With respect to the possibility of current valuation referenced in S.L. v. R.L., supra, case law indicates that the uncertainty of value of a party's interest does not necessarily require its exclusion from the marital estate. See, e.g., Hanify v. Hanify, 403 Mass. 184, 188 (1988) (fact that "pending lawsuits" are of uncertain value does not require their exclusion from the marital estate); Lauricella v. Lauricella, 409 Mass. at 217 (fact that valuation of interest may be difficult does not alter its character as divisible asset); Davidson v. Davidson, 19 Mass. App. Ct. 364, 372 (1985) ("We do not think that either the uncertainty of value or the inalienability of the interest, in themselves, are sufficient to preclude consideration of the interest as subject to division").

In such circumstances, an asset may be divided on an "if and when received" basis. Hanify v. Hanify, 403 Mass. at 188. See Adams v. Adams, 459 Mass. 361, 379 & n.14 (2011); S.L. v. R.L., 55 Mass. App. Ct. at 885. As the Supreme Judicial Court has stated, while a "'present division of all assets ordinarily is preferable,' because it provides an immediate settlement of the distribution without entangling the parties in future litigation, and the continued strife and uncertainty it entails," Adams v. Adams, 459 Mass. at 379 n.14, quoting from Hanify v. Hanify, 403 Mass. at 188, "where a present valuation of [an asset] is uncertain or impractical, the better practice is to order that any future recovery or payment be divided, if and when received, according to a formula fixed in the property assignment." Ibid. See S.L. v. R.L., 55 Mass. App. Ct. at 884-885.

We have also indicated that an "expansive," rather than a restrictive, approach to what constitutes marital property is appropriate. D.L. v. G.L., 61 Mass. App. Ct. at 493, and cases cited. Whether a party's interest in certain property is part of the marital estate for purposes of G. L. c. 208, § 34, has been said to present a question of law that we are in as good a position as the probate judge to answer. See Lauricella v.

Lauricella, 409 Mass. at 213.[9]  But compare Adams v. Adams, 459
Mass. at 378.

In the instant matter, The Night Circus was created
essentially during the marriage and the Doubleday and Summit
contracts were executed during the marriage.  Erin's rights in
those contracts, as Peter points out, are present and
enforceable and, with respect to value, dependent, in the case
of the Doubleday contract, on the number of books sold worldwide
and, in the case of the Summit contract, on whether Summit
chooses to exercise the option for the rights it acquired
through its contract with Erin.  The contracts have already
generated extraordinary payments for Erin and have the potential
for generating additional payments in the future.

Notwithstanding the foregoing, Erin suggests in her brief
that case law supports the judge's determination to exclude from
the divisible marital estate as too speculative "future royalty

---

[9] "This determination involves neither an exercise of
discretion nor consideration of the enumerated § 34 factors."
Lauricella v. Lauricella, 409 Mass. at 213 n.2.  See D.L. v.
G.L., 61 Mass. App. Ct. at 495-497, where, after stating that
the question whether a party's interest in trust property is
part of the estate for purposes of § 34 presents a question of
law, we concluded on the evidence that the husband's interest in
the trust principal "properly may be characterized as 'too
remote or speculative' to be included within the martial
estate."  Id. at 497.

income."[10]  She points to several cases.  In Cabot v. Cabot, 18 Mass. App. Ct. 903, 904 (1984), we held that a probate judge properly may decline to treat as a marital asset the present value of future earning potential.  We reasoned that future earnings were too speculative and subject to variables, the least of which being that they may never be achieved because of death, illness, or simply market factors.  Similarly, in Drapek v. Drapek, 399 Mass. 240, 243-244 (1987), a case that involved the question whether the husband's medical degree and resulting increased earning capacity should be treated as part of the marital estate subject to division, the Supreme Judicial Court stated that the present value of future earned income is not subject to equitable assignment under G. L. c. 208, § 34.  "To adopt a rule that would subject such an item to distribution upon divorce would foreclose consideration of the effect of future events on the individual's earning capacity.  Unlike alimony, a property settlement is not subject to modification." 399 Mass. at 244.  Finally, in Yannas v. Frondistou-Yannas, 395 Mass. at 706, the husband in the divorce proceeding was a world-renowned scientist who was the coinventor of an artificial skin designed for the treatment of severe burn victims.  In

---

[10] Erin states that the judge properly could consider the future royalty income in the context of her future opportunities to acquire assets and income.

addressing the division of the marital estate, the court stated: "[The judge] was not obliged to place a value on the husband's royalties, patents or copyrights.  He was warranted in declaring uncertain the value of the husband's patents on artificial skin. The judge could have concluded on the evidence that the present value of the husband's future income from this source was too speculative to consider.  The asset was not one which obviously has current value but is difficult to appraise (such as a close corporation)."  Id. at 714.  The court later summarized its holding in the Yannas case as follows:  "Similarly, in Yannas . . . we declined to characterize the present value of a grant of a patent as a divisible asset because any enhanced earning potential the patent created was merely speculative" (emphasis added).[11]  Adams v. Adams, 459 Mass. at 374.

In subsequent decisions, the Supreme Judicial Court has indicated that cases such as Drapek and Yannas, which implicate future earning potential or enhanced future earning potential, involve "expectancies."  See Hanify v. Hanify, 403 Mass. at 188; Lauricella v. Lauricella, 409 Mass. at 216; Adams v. Adams, 459

---

[11] A "patent" has been described as a "bundle of legal rights granted to an inventor by [F]ederal law" which "consist in essence of the right to exclusive use of the invention for a limited period of time."  2 Turner, Equitable Distribution of Property, § 6:77 (3d ed. 2005).  The Yannas decision contains no discussion of the evidence that was before the probate judge concerning the patents there in issue.

Mass. at 374. Our courts "have drawn a line around certain interests that are so speculative as to constitute nothing more than expectancies, and thus, are not assignable to the marital estate." Ibid. See Hassey v. Hassey, 85 Mass. App. Ct. 518, 531 n. 22 (2014). "Expectancies . . . do not embody either a present or future enforceable proprietary right . . . ;" they have only theoretical value. Adams v. Adams, 459 Mass. at 374-375, 377. See Hanify v. Hanify, 403 Mass. at 188 ("Expectancies . . . embody no enforceable rights accruing during the marriage").

Here, Erin's contractual rights to future royalty and other payments do not, in our view, involve mere expectancies as described in the foregoing cases. While the amount of the royalty and other payments to be received by Erin in the future cannot yet be ascertained, the right to receive those royalties and other payments was contractually established at the time of the divorce.[12] Indeed, Erin's interests in the present case are,

---

[12] A weakness in Erin's position, and her reliance upon cases such as Cabot v. Cabot, 18 Mass. App. Ct. at 904, is manifest in her statement in her brief that her future novel-related payments may never be achieved due to "death, illness, or simply market factors." While such a statement would make sense in the scenario presented in Cabot (where the wife sought to offer the opinion of an actuary of the present value of the earning capacity of the husband and wife, respectively, until each reached the age of sixty-five), it makes little sense in the context of this case where Erin has vested contractual rights.

in certain respects, analogous to a party's interest in the payment of pension rights which has been recognized as marital property subject to division. See Dewan v. Dewan, 399 Mass. 754, 755, 757-758 (1987); D.L. v. G.L., 61 Mass. App. Ct. at 493 n.9. See also Mahoney v. Mahoney, 425 Mass. 441, 444 (1997) ("An employee who participates in a pension plan has an enforceable contractual right to receive future benefits from the plan"). We are also mindful of the proposition, set out by the Supreme Judicial Court in Adams, that "we are unwilling to deny one spouse, who contributed to the acquisition or appreciation of property during the marital enterprise, 'the right to share in what may be the most valuable asset between the spouses' on the basis of the uncertainty or future contingencies bound up in that asset." Adams v. Adams, 459 Mass. at 376, quoting from Baccanti v. Morton, 434 Mass. at 796 (quotation omitted). "To hold otherwise would frustrate the intent of the Legislature in so broadly drafting § 34." Ibid.

We note that the courts of a number of jurisdictions have determined that, in appropriate circumstances, an interest in future book royalties can be included in the parties' divisible marital estate. See, e.g., Gallo v. Gallo, 184 Conn. 36, 48 (1981) (award to plaintiff of twenty percent of defendant's royalties for period of five years upheld where right to receive royalties was contractually established and was neither

indefinite nor speculative); <u>Lynch</u> v. <u>Lynch</u>, 135 Conn. App. 40, 51-52 (2012); <u>In re Marriage of Heinze</u>, 257 Ill. App. 3d 782, 783-789 (1994) (distinguishing <u>Yannas</u> case, <u>supra</u>; where contract right to future book royalties was acquired during marriage, future book royalties are "fruit of the shared enterprise of marriage" and should be divided as marital property); <u>In re Marriage of White</u>, 537 N.W.2d 744, 746-747 (Iowa 1995).  See also <u>Young</u> v. <u>Kelly</u>, 334 P.3d 153, 160 n.34 (Alaska 2014).  See and compare <u>Morenberg</u> v. <u>Morenberg</u>, 65 So. 3d 1199, 1200-1201 (Fla. App. 2011) (husband required to share equally in royalties he receives from two books he wrote and revised during marriage, but not future royalties on book edition he revised after petition for dissolution).  See generally, American Law Institute, Principles of the Law of Family Dissolution Analysis & Recommendations § 4.08 (2002).[13]

---

[13] As for Erin's argument that no evidence was introduced at trial regarding the present value of future payments, as we have discussed, where valuation of an interest is uncertain or impractical a judge is not precluded from dividing an asset on an "if and when received" basis.  Peter requested this form of division in his proposed findings and judgment.  Erin also appears to argue that even assuming that her contractual rights should have been included in the § 34 division, any future royalty payments she receives will be income to her and the payment of any portion of that income to Peter must be treated as the payment of alimony, which is precluded by Peter's waiver of alimony.  This argument was not raised below and, indeed, Erin proceeded in her proposed findings, conclusions, and rationale on the theory that her future earning potential and postdivorce royalty and book-related income could not be treated under Massachusetts law as marital property (citing to <u>Drapek</u> v.

Based on all of the foregoing, we conclude that the judge erred in excluding from the marital estate subject to equitable division Erin's interest in future payments to be received by her subsequent to the divorce under the Doubleday and Summit contracts.[14]

In view of the decision we reach on this issue, we are constrained to vacate the order directing Erin to pay to Peter the lump sum of $570,000 as his share of the royalty and book-related earnings she has received to date from the publication of The Night Circus. In fixing that specific monetary award, the judge indicated that he had considered carefully the G. L. c. 208, § 34, factors, which would presumably include the opportunity of each party to acquire capital assets and income in the future and may encompass Erin's interests in future

___

Drapek, 399 Mass. at 243-244) and was too speculative. While a party "may defend a judgment on any ground based on the record so long as raising the argument is not unfair to its opponent," Perseus of N.E., MA, Inc. v. Commonwealth, 429 Mass. 163, 168 (1999), it is doubtful in the circumstances presented that the fairness aspect of the principle has been met as to Erin's waiver of alimony argument. In any event, on the limited issue presented, we do not consider that argument to be persuasive. See e.g., § 71(b) of the Internal Revenue Code, 26 U.S.C. § 71(b) (2012); Kindregan, McBrien and Kindregan, Family Law and Practice § 16:2 (4th ed. 2013).

[14] That Erin might conceivably be called upon by Doubleday to perform some promotional activity in the future (see note 3, supra), would not, in the circumstances presented in this case, preclude her interest in future contractual payments from being considered part of the marital estate.

royalty and other payments.  See S.L. v. R.L., 55 Mass. App. Ct. at 883 ("Interests considered too remote or speculative for inclusion within the estate are instead weighed under the § 34 criterion of 'opportunity of each [spouse] for future acquisition of capital assets and income' in dividing the marital property").  As we are unable to determine the weight accorded by the judge to this § 34 factor in fixing the monetary award, and as we now hold that Erin's interest in future proceeds under the Doubleday and Summit contracts is to be considered part of the marital estate subject to equitable division under § 34, the lump sum monetary award must be reexamined.

b.  The parties' contributions.  Peter argues next that the judge erred by finding the parties' contributions to the marital estate to be unequal and making an unequal division of the marital estate based on this erroneous finding.  Although we have concluded that the order directing Erin to pay Peter the lump sum of $570,000 must be vacated, we address Peter's claim of error with respect to the parties' contributions.

Among the G. L. c. 208, § 34, factors a judge may consider in fashioning an equitable division is the contribution of each of the parties to the acquisition, preservation, or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit.  Indeed,

we have stated that the "parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate." Moriarty v. Stone, 41 Mass. App. Ct. 151, 157-158 (1996). We may set aside a judge's findings of fact when they are clearly erroneous. Mass. R. Dom. Rel. P. 52(a).

Here, Peter asserts that the judge expressly rested his unequal division of the marital estate on his conclusion that his (Peter's) contributions were not equal to Erin's contributions of her talent, imagination, and skill to the creation of The Night Circus. Peter states that the notion that one spouse's direct contribution of skills or talent to a marital asset should outweigh the different but equivalent marital contributions of the other spouse was rejected in deCastro v. deCastro, 415 Mass. 787, 792-795 (1993) (rejecting claim that husband's "genius" in cofounding and developing highly successful corporation was factor under § 34, and stating that concept of equitable division must be read to apply in broad sense to value of all contributions of respective spouses towards marital enterprise). Peter further asserts that it is clear that the parties in this case made distinct but equal contributions to their marital partnership. In short, Peter argues that there was simply "no basis or adequate explanation

in the judge's findings or rationale for his conclusion that the parties' marital contributions were not equal."

In fashioning his argument, Peter relies in part on the following two sentences that are contained in the judge's rationale: "The Husband provided Wife with financial and emotional support in her efforts to pursue the creative arts. Wife then created the world of The Night Circus from her imagination and used her skill (and others) to develop that into a book that has grossed over three million dollars in royalties."  Peter notes, correctly, that the judge then stated, "These contributions are not equal."  Viewed in isolation, the sentences to which Peter points provide some support for his position that the judge may have unduly emphasized Erin's extraordinary talent and writing skills (while minimizing Peter's contributions that may have allowed Erin the luxury of writing her novel).

However, we think Peter reads too narrowly the judge's findings and rationale.  The judge considered the G. L. c. 208, § 34, factors and made findings concerning, for example, the parties' contributions both before and after their separation. Among other things, the judge found that Erin traveled to and appeared at about seventy book signings, readings, and similar events throughout the United States and Canada and took part in one-half dozen European and United Kingdom promotional visits.

These activities took place primarily between mid-September and early November, 2011 -- after the parties' had separated. Erin continued to do publicity and marketing work in 2012 (after the release of the paperback edition of The Night Circus) and 2013. The judge, as we have indicated, specifically stated in his rationale that the financial success of The Night Circus was enhanced by Erin's efforts and abilities in promoting the book.[15] Viewing the findings and rationale in their entirety, and giving due consideration to Erin's efforts through the date of the divorce, we cannot say that the judge's findings are clearly erroneous or that he otherwise erred in determining that the parties' contributions were not equal.

---

[15] Erin emphasizes in her brief her significant postseparation contributions to the enhancement of the value of The Night Circus, and the "complete absence" of any contribution by Peter to the novel after the parties' separation. In his reply brief, Peter does not appear to argue that the judge could not consider the postseparation contributions of Erin. Rather, he asserts that the judge's unequal property division cannot be upheld based on his finding that Erin's promotional activities enhanced the financial success of The Night Circus "in the absence of any findings or rationale which factored the correlative value of the husband's post-separation marital contributions into the decisional calculus." Notwithstanding Peter's argument, the judge did, in fact, make findings that Peter had gone with Erin to several local book signings and accompanied her on one international trip. The judge also made findings concerning the parties' postseparation interactions and circumstances (Erin has reestablished herself in New York City), the expenses they pay, the fact that each is self-supporting, and the fact that they have not spoken to each other in almost two years. The judge noted that Peter had kept Erin on his health insurance policy.

4. <u>Disposition</u>. The matter must be remanded to the Probate and Family Court with instructions that Erin's interest in future proceeds under the Doubleday and Summit contracts arising from her novel, The Night Circus, is to be considered a part of the marital estate for G. L. c. 208, § 34, purposes. In the circumstances presented, that interest would seem particularly suited to division on an "if and when received" basis, with the judge determining the percentages of any future payments to be assigned to Erin and Peter.[16] See e.g., <u>Gallo</u> v. <u>Gallo</u>, 184 Conn. at 48; <u>In re Marriage of Heinze</u>, 257 Ill. App. 3d at 785-787.

We recognize that the division of future royalty and other, similar payments may present special challenges to the probate judge. Among other things, the future book sales, upon which the royalties are based, may be enhanced by the postdivorce efforts of the writer-spouse through promotion, marketing, brand building, and the creation of subsequent works (which may generate interest in an earlier work). See <u>In re Marriage of Heinze</u>, 257 Ill. App. 3d at 788. Future promotional and other

---

[16] We do not rule out the possibility that other cases may present facts that would support a judge's decision not to divide future royalty payments on an if and when received basis. For example, there may be circumstances, including those in which there has been a history of modest royalty payments, where the judge might assign to the writer-spouse's side of the ledger the entire interest in future royalty payments.

efforts by a writer-spouse, even if not required by contract, may also contribute to the success of a motion picture or theatrical production which may, in turn, enhance the sales of the underlying work on which the movie or other production is based. The point we make here is, with the passage of time, the respective contributions of the parties to the marital partnership, which allowed for the creation of the work, may become attenuated. A judge properly may consider such factors, in conjunction with all of the G. L. c. 208, § 34, factors, in determining the percentages of any future payments to be allocated between the parties. See ibid. (petitioner's continuing efforts entitled her to larger share of future royalties). See and compare Baccanti v. Morton, 434 Mass. at 798-799.[17]

We recognize, in addition, that royalty payments, particularly on a highly successful work, have the potential of extending well into the future, perhaps beyond the death of one or both of the parties. That the future royalty, and other,

---

[17] Such other matters as may be relevant can be considered and addressed in the Probate & Family Court. We point out that Peter took the position in his proposed judgment that, in the circumstances of this case, an if and when received division should be of the "net" proceeds Erin receives, i.e., the total amount of monies paid to Erin less amounts deducted for certain commissions and management and business expenses as well as income taxes paid in conjunction with the receipt of such monies.

payments in the present case are to be divided on an if and when received basis does not require that such payments continue indefinitely. Cf. Gallo v. Gallo, 184 Conn. at 48. For the reasons we have expressed concerning the potential attenuation of the parties' contributions to the marital partnership, as well as our concern for future administrative costs and other possible hardships, a judge reasonably may limit the duration of, and the amount to be received under, the if and when received division.[18]

As we have discussed, the judge's order directing Erin to pay to Peter a lump sum of $570,000 as his share of the royalty and book-related earnings she has received to date must be vacated. The judge may recalculate, if necessary, the lump sum owed in light of our decision that Erin's contractual interest in the future royalty (and other) payments is to be included in the marital estate. Any amounts Peter has received from the order for payment of the $570,000 shall be considered an advance against the property division established in the amended judgment that is to be entered, which may or may not have to be repaid.

---

[18] We do not exclude the possibility of creative approaches by the probate judge, including, for example, a sliding scale of decreasing percentages, which has a specific termination date.

As neither the judge nor the parties had the benefit of the principles we enunciate in this opinion, as a matter of fairness we think that the parties should be afforded the opportunity to present, and the judge to consider, additional evidence bearing on the amount of the royalty and other payments to be received by Erin under the Doubleday and Summit contracts. The judge shall hold additional hearings as may be necessary to receive such evidence. An amended judgment containing new orders shall be supported by findings of fact and a rationale.

Accordingly, we vacate so much of the judgment as implicitly excludes from the marital estate subject to division under G. L. c. 208, § 34, Erin's interest in future proceeds under the Doubleday and Summit contracts arising from the novel, The Night Circus, and remand the case for further proceedings consistent with this opinion. We also vacate the order for payment of the sum of $570,000. The judgment is otherwise affirmed.

Erin's request for appellate costs and attorney's fees is denied.

So ordered.